UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCOTT A. KANTER,<br><br>                Plaintiff,<br><br>v.<br><br>SCOTT J. WERNER, WERNER ENTERPRISES and L&C SPRING WATERS OF NEW ENGLAND, LLC (f/k/a L&C SPRING WATERS OF NEW ENGLAND HOLDING COMPANY, LLC.),<br><br>                Defendants. | CIVIL ACTION NO.<br><br>04  10489 RCL |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
HIS APPLICATION FOR A PRELIMINARY
INJUNCTION AND FOR EXPEDITED DISCOVERY**

### I. Introduction

The plaintiff Scott A. Kanter ("Kanter") submits this memorandum in support of his application for a preliminary injunction against Defendants Scott J. Werner ("Werner") and L&C Spring Waters of New England, LLC ("L&C"). The Verified Complaint in this action is filed herewith in support of the request for injunctive relief.

In his complaint, Kanter seeks a declaratory judgment, permanent injunctive relief, the appointment of a receiver, and damages in connection with Kanter's ownership interest in Deluge, LLC, a closely held Massachusetts Limited Liability Company. Although the Operating Agreement under which Deluge, LLC was formed provides that Kanter is both a Member and the manager of Deluge, LLC, the Defendants have unlawfully converted the management, ownership and operations of Deluge, LLC to themselves without obtaining Kanter's consent, as required by the Operating Agreement and Massachusetts law. Moreover, the Defendants have refused to

BO1 15630812.1

provide an Accounting of Deluge, LLC to Kanter, and they have refused to produce any detailed operating information, including bank statements, cancelled checks, contracts and credit card statements concerning the management and business operations of Deluge, LLC or its primary asset, a natural spring located in Brentwood Spring, New Hampshire. Kanter alleges and believes that the Defendants have refused to provide an Accounting and produce source documents because they are unlawfully converting the assets of Deluge, LLC and its natural water source to their own use.

If the requested injunctive relief is not granted, Kanter will suffer irreparable harm, including possible permanent damage to the assets of Deluge, LLC, including the company's water source. Moreover, without the grant of injunctive relief, including an immediate Accounting and appointment of a receiver to oversee the business, there is a very real and legitimate threat that the converted assets will be misappropriated and will be unrecoverable. To the contrary, there will be absolutely no prejudice to the Defendants if the requested relief is granted, other than assuring that no additional unauthorized transfers are made to the Defendants. In addition, Kanter can establish the other requirements for the issuance of a preliminary injunction. As such, the application should be allowed.

Kanter further seeks to serve Werner and L&C each with a set of document requests, pursuant to Fed. R. Civ. P. 34, to be produced within two weeks of this Court's order, and to take a preliminary deposition of Werner, pursuant to Fed. R. Civ. P. 30, one week after the documents are produced. As grounds therefor, Kanter states that "good cause" exists to warrant the entry of an order permitting him to undertake this expedited discovery prior to the conference mandated by Rule 26(f). Specifically, the expedited discovery will allow Kanter to attempt to promptly

ascertain the full nature and extent of Werner and L&C's misappropriation of Deluge's assets and other tortious activities.

## II. Statement of Facts

On April 15, 1997, Kanter entered into an Operating Agreement with Portogon Investments, SA, a Panamanian corporation with offices in Jersey, Channel Islands, to form Deluge, LLC, a Massachusetts limited liability company. The Operating Agreement provides that Kanter owns 33.33%, and Portogon owns 66.66% of Deluge, LLC. The Operating Agreement also provides that Kanter is the sole manager and that the registered offices of Deluge, LLC are located at 109 State Street, Boston, MA 02109. *See Verified Complaint for Declaratory Judgment, Injunctive Relief, Appointment of Receiver and Damages, ("V.C."),* ¶ *9.*

On June 10, 1997, Deluge, Inc., a Massachusetts corporation whose shareholders were Kanter and Portogon, merged into Deluge, LLC, with Deluge, LLC remaining as the surviving entity. As part of this transaction, a ground lease to 44.19 acres in Brentwood, New Hampshire, and rights to the Brentwood Spring, a natural spring water source, were transferred to Deluge, LLC. In addition, as part of the transaction certain long-term renewable contracts to supply water to third party resellers and an affiliated company were transferred from Deluge, Inc. to Deluge, LLC. The ground lease had been acquired by Deluge, Inc. in 1996. *V.C.* ¶ *10.* Between June 10, 1997 and the present, the primary business of Deluge has been, and continues to be the supply of natural spring water from the Brentwood Spring, to which Deluge has exclusive rights under the ground lease. The current ground lease runs through September 30, 2006, and is subject to four successive 10 year extensions. *V.C.* ¶ *11.* The Brentwood Spring is currently a profitable water source, supplying water to numerous third party vendors under long-term

3

contracts, including, among others, Royal Ahold and Ahold USA, which owns Stop & Shop locally, among other businesses. *V.C. ¶ 12.*

Although he is neither a Member nor manager of Deluge, LLC under the Operating Agreement, Werner, who had been a director of Deluge, Inc. but never had any ownership interest in that company, has been managing the day-to-day operations of Deluge, LLC, conditioned upon and with the obligation to report regularly to Kanter regarding the operations of the business. At no time did Kanter delegate any ownership interest to Werner or any written management authority under the Deluge, LLC Operating Agreement. Werner, therefore, has been acting akin to an employee at will, subject to removal at any time. *V.C. ¶ 13.*

After the formation of Deluge, LLC in 1997, Kanter, the manager and an accountant, prepared the initial annual corporate tax return for Deluge, LLC for that fiscal year. After 1997, an independent accounting firm in Massachusetts was hired to prepare the returns for 1998 and 1999. In connection with preparing these returns, Kanter and this firm requested that Werner provide certain annual financial information for Deluge, LLC, including total revenues, expenses, assets and liabilities. Werner provided sufficient information to Kanter and the accountants to prepare the company's tax returns for each of these fiscal years, and in each of these years Deluge, LLC reported a profit. *V.C. ¶ 14.*

Beginning in early 2001, Werner began to delay providing financial information to Kanter related to Deluge, LLC and the Brentwood Spring. For example, requests by Kanter for balance sheets, income statements and detailed general ledgers for Deluge, LLC in May and June 2001 went unanswered, and Werner claimed that he had his own accountant prepare the information. During this period, Werner also transferred the tax accounting for Deluge, LLC to a

firm in New Hampshire. Throughout this period, Kanter continued to demand detailed financial information regarding the business, and Werner refused to provide this information. *V.C. ¶ 15.*

Moreover, unknown to Kanter at the time, Werner undertook efforts to take control of the profits emanating from the Brentwood Spring by seeking to move the ownership and management of Deluge, LLC to himself and his own operating company, L&C Spring Waters of New England, LLC ("L&C"). Specifically, on February 20, 2002, Werner executed an Assignment and Contribution Agreement by and between Werner, Portogon and L&C, which purported to transfer a 66.66% interest in Deluge, LLC to L&C. Kanter was never informed of this agreement, nor did he sign any authorization for any transfer of an interest to Werner or L&C, as required under the Deluge, LLC Operating Agreement. In addition, although this Agreement purported to transfer an interest from Werner, Werner never owned any interest in Deluge, LLC. *V.C. ¶ 17.* At no time was Kanter informed of the terms of the offer by L&C to purchase or receive as interest from Portogon and/or Werner, as expressly provided in the Operating Agreement, nor was he offered the right to match that offer and acquire the transferred interest on the same terms. *V.C. ¶ 18.* Having unlawfully transferred an ownership interest to L&C, Werner then transferred all of the management and operations of Deluge, LLC to L&C, including all of the day-to-day operations, documents, revenues and profits of the Brentwood Spring. *V.C. ¶ 19.*

Since February 2002, Kanter has been provided virtually no information regarding the day-to-day operations of Deluge, LLC, L&C or the Brentwood Spring, other than summary financial information included within Deluge, LLC's publicly-filed annual tax returns and a summary annual financial statement. Despite repeated requests for legal documents, detailed financial statements and ledgers, and source documents such as bank statements, cancelled

checks and credit card statements, Kanter has been provided none of this information. Likewise, Werner has refused to provide any documentation or support for various "expenses" charged by Werner or L&C to Deluge, LLC, including undocumented inter-company "transfers," unsupported "management fees," unauthorized "loans" and similar unidentified payments made by Deluge to Werner, Werner Enterprises and/or L&C. *V.C.* ¶ *20.*

On several occasions during 2002 and 2003, as Kanter continued to demand detailed supporting information, Werner asserted that he would cooperate in providing the financial information that had been requested by Kanter. Specifically, in several conversations Werner stated that he would produce the requested information, such as detailed general ledgers, but then produced only minimal summary information, if any information at all. *V.C.* ¶ *21.*

During late 2002 and into 2003, Kanter became increasingly concerned about his inability to obtain detailed financial information regarding the operations of Deluge, LLC and the Brentwood Spring from Werner. Promises to provide the requested information continued to go unmet, and Werner provided the bare minimum information to allow Kanter to prepare his own personal tax returns, and nothing more. *V.C.* ¶¶ *22, 37.* In addition, charges in the form of undocumented and unauthorized loans, transfers, management fees and miscellaneous expenses continued to be assessed by Werner, Werner Enterprises and/or L&C during this period. During 2003, Werner provided even less information than he had during 2002, and the communications between Werner and Kanter grew less and less frequent, despite repeated attempts by Kanter to schedule a meeting and review the detailed information of Deluge, LLC, L&C and Brentwood Spring. Kanter also sought to obtain information directly from Werner's New Hampshire accountant, but was again provided only summary information without supporting detail. *V.C.* ¶ *23.*

BO1 15630812.1

Supporting Kanter's suspicions that Werner was unlawfully converting the assets of Deluge, LLC and the Brentwood Spring, the expenses and fees charged to Deluge equaled or closely equaled Deluge's reported revenue in 2000 through 2003, despite Werner's public statements that Deluge and the Brentwood Spring were profitable. *V.C. ¶ 24.* As demonstrated by the information that Kanter has been able to obtain, Deluge, LLC had water sales of $470,620 in 2000, $618,474 in 2001, and $565,618 in 2002. *V.C. ¶ 28.* Despite these revenues, and the fact that Deluge, LLC had been quite profitable through 1999, no distributions were made to Kanter or Portogon in 2001, 2002 or 2003, because "expenses" and transfers, including the various unauthorized, unapproved and undocumented advances, loans and fees described above, had been charged by Werner and/or L&C to Deluge, LLC. At no time has Werner provided any detailed support for these expenses and fees, and no explanation has even been given for the basis upon which they were charged to Deluge, LLC. *V.C. ¶ 24.*

### III. Argument

**A.  Kanter Has Satisfied The Elements Required For The Issuance Of A Preliminary Injunction Against Werner and L&C.**

In order for a preliminary injunction to issue, Kanter must demonstrate the following elements: (1) that he will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the Defendants; (3) that he has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction. Planned Parenthood League v. Bellotti, 641 F.2d 1006, 1009 (1st Cir. 1981). Of these factors, the most important is Kanter's likelihood of success on the merits. See Gately v. Commonwealth, 2 F.3d 1221, 1225 (1st Cir. 1993). In the present case, Kanter has firmly established all of the elements for the issuance of injunctive relief.

1.  **Likelihood of Success on the Merits**

Kanter's primary claims against Werner and L&C are extremely straightforward, seeking a complete and detailed Accounting of unauthorized transfers of Deluge, LLC assets to Defendants, the production of information that Werner and L&C have refused to produce, and for the imposition of a receiver to oversee the operations of the business and prevent any further conversion or erosion of Deluge, LLC assets by Defendants. As established by the accompanying Verified Complaint and the Deluge, LLC Operating Agreement, Kanter has a likelihood of succeeding on the merits of these claims, and there is no legal basis upon which Werner and L&C can continue to refuse to provide the information sought by Kanter or an Accounting.[1]

There is no question that the purported transfer of an interest in Deluge, LLC to L&C in February 2002 was not in compliance with the express provisions of the Operating Agreement and was therefore invalid. Neither L&C nor Werner, therefore, has any written authority under the Operating Agreement to act on behalf of Deluge, LLC and, as a result, must turn over all information in his possession related to the operations of Deluge, LLC and the Brentwood Spring. This information must include detailed information, including crucial source documentation such as bank statements, cancelled checks, drafts and credit card statements regarding every loan, advance, "expense" or "fee" charged by Defendants to Deluge, LLC since January 1, 2000. Furthermore, as a Member and sole manager of Deluge, LLC, Kanter is

---

[1] Kanter has also asserted claims against Defendants for damages. While these claims are not addressed directly in this memorandum, the facts submitted in support of this request for injunctive relief also clearly establish a likelihood of success on the merits of Kanter's claim for damages, which essentially flows from the Defendants' unlawful conversion of the assets of Deluge, LLC.

BO1 15630812.1

entitled to receive this information immediately. Notwithstanding the clear requirement to produce this information to Kanter, Werner has refused.

Second, even if Werner could somehow establish that he has the authority to act in the interests of Deluge, LLC, Massachusetts law and the Operating Agreement provide that Kanter is entitled to a complete Accounting of the expenses charged to Deluge, LLC, with detailed documentation supporting this Accounting. For example, M.G.L. ch. 156C § 10 provides that every Member is entitled to receive business and financial information concerning the operations of the company. The Operating Agreement is even more specific, requiring that the Members must approve all expenses, subject to a biweekly presentation "of a complete expense report *together with appropriate supporting documentation* for such expenses." Operating Agreement ("Op. Agr.") ¶ 7.2.

Finally, to the extent that Defendants contend that Deluge, LLC has no detailed information because the information is in the possession of L&C or some other entity, that argument should be squarely rejected. It is only through their unlawful attempt to transfer ownership and conversion of the assets of Deluge, LLC that this information is not in the possession of Deluge, LLC. As alleged in the Verified Complaint, L&C has never received unanimous written authorization from Deluge, LLC's Members to operate the business, including the Brentwood Spring. In addition, Defendants were certainly never authorized to operate the business without an obligation to provide a detailed Accounting, including source documents, to the Members of Deluge, LLC, including Kanter. All of L&C's activities, therefore, including the execution of documents, operating of the business, writing of checks, and transfers of assets, are unauthorized and unlawful. There is clearly a likelihood of success

on Kanter's claims against Defendants for unlawful conversion and declaratory relief, supporting the injunctive relief sought.

### 2. Irreparable Harm /No Adequate Remedy at Law

Because the assets and documents of Deluge, LLC are in Defendants' possession and under their control, there exists an imminent danger of those assets and documents being depleted, damaged, destroyed or misappropriated further. As such, there exists an imminent danger that Kanter will suffer irreparable harm if injunctive relief is not granted. Defendants, meanwhile, whose activities are unauthorized and unlawful, will not suffer any harm from the issuance of the injunctive relief, which simply seeks to require the provision of information already required to be produced, and to maintain the status quo and prevent further erosion of the business. See, e.g., Fleet Nat'l Bank v. Rapid Processing Co., Inc., 643 F. Supp. 1065, 1066 (D. Mass. 1986) (granting status quo injunction where there existed risk of depletion of assets). Kanter is not asking that Deluge, LLC be prevented from engaging in business in the ordinary course, but only that information to which Kanter is entitled be immediately produced, and that the operations of the business be conducted under the close supervision of a court-appointed receiver to prevent further conversion or erosion of assets. Only through a court order requiring full correct and historical disclosure, and ongoing supervision, protection and disclosure in accordance with Massachusetts law and the Operating Agreement, can irreparable harm be prevented. To the contrary, there is simply no prejudice whatsoever to Defendants, other than the possibility that their unlawful activities will be exposed and remedied.

### 3. Public Policy Will Be Served

The public policy of full disclosure to members and managers in Massachusetts limited liability companies, as embodied and promoted by Chapter 156C, only will be served by this

Court's granting a preliminary injunction appointing a receiver, requiring Defendants to provide a complete Accounting, protecting the assets of Deluge, LLC, and requiring Defendants to produce detailed supporting information to Kanter. This Court should prohibit Defendants from enjoying the fruits of their unlawful acts; namely, benefiting from their unlawful conversion of the assets and profits of Deluge, LLC and the Brentwood Spring to themselves, while ignoring the requirements of the Operating Agreement and the Massachusetts limited liability company statute.

### B.  Good Cause Exists For Permitting Kanter To Conduct Expedited Discovery Prior To The Mandatory Rule 26(f) Conference.

Under Fed. R. Civ. P. 26(d), this Court has the authority to enter an order permitting a party to conduct discovery prior to the conference required by Rule 26(f). While it is not stated in Rule 26(d), at least one commentator has suggested that "it is implicit that some showing of good cause should be made to justify such an order." Charles Alan Wright, Arthur R. Miller and Richard L. Marcus, 8 Federal Practice and Procedure § 2046.1 (1994). Such "good cause" exists to warrant the issuance of an order in this case, permitting Kanter to serve Defendants with requests for documents, pursuant to Rule 34, to be produced within two weeks of this Court's order, and take a preliminary deposition of Werner[2] three weeks after the issuance of this Court's order.

Expedited discovery is warranted in this case in order to allow Kanter to attempt to gain a better understanding of (1) the unauthorized transfer of an ownership interest in Deluge, LLC to Werner; (2) the nature and extent of the unauthorized expenses, fees and other charges assessed

---

[2] The proposed preliminary deposition would not preclude Kanter from taking Werner's further deposition in the ordinary course of discovery in this action and Kanter would not be required to seek leave of Court, pursuant to Fed. R. Civ. P. 30(a)(2)(B), in order to take Werner's further deposition.

to Deluge, LLC by Werner and/or L&C; and (3) the nature and extent of the property, assets and contracts that were misappropriated by Werner and L&C, to the detriment of Deluge, LLC and Kanter. Until this discovery is obtained, Kanter will not be able to fully comprehend the extent to which his interests in Deluge, LLC have been compromised and will not be in a position to take any necessary steps to further protect those interests. The expedited discovery may also assist the parties in narrowing the focus of discovery in this case.

## IV. Conclusion

For the foregoing reasons, Scott A. Kanter respectfully requests that this Court grant a preliminary injunction in the form filed herewith and enter an order permitting them to conduct the requested expedited discovery.

SCOTT A. KANTER,
By his attorneys,

_____
Christopher F. Robertson (BBO No. 642094)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:   (617) 946-4800
Telecopier:  (617) 946-4801

Date: March 11, 2004