UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SCOTT A. KANTER and DELUGE, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> SCOTT J. WERNER, WERNER ENTERPRISES and L&C SPRING WATERS OF NEW ENGLAND, LLC (f/k/a L&C SPRING WATERS OF NEW ENGLAND HOLDING COMPANY, LLC.), <br><br> Defendants. | CIVIL ACTION NO. 04-10489 (RCL) |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' EMERGENCY MOTION FOR CIVIL CONTEMPT**

The plaintiffs Scott A. Kanter ("Kanter") and Deluge, LLC ("Deluge") (collectively "plaintiffs") hereby move on an emergency basis for an order finding the defendants Scott J. Werner, Werner Enterprises and L&C Spring Waters of New England, LLC in civil contempt of the Court's preliminary injunction order, submitted by stipulation of the parties on April 1, 2004 and entered by the Court on April 9, 2004. As set forth below, the defendants have failed to comply with the Court's injunctive order by failing to produce the documents and information ordered to be produced, and by failing to provide an accounting to the plaintiffs, among other matters. In light of these clear violations of the Court's prior order, the plaintiffs request that Court find the defendants in civil contempt, order the information to be produced immediately, require the defendants to provide a current accounting and establish a separate bank account to receive the proceeds of the Brentwood Spring, with approval and signatory authority given to

Kanter, and award the plaintiffs their costs in bringing this motion, including their attorneys' fees.

## BACKGROUND FACTS

On April 15, 1997, Kanter entered into an Operating Agreement with Portogon Investments, SA, a Panamanian corporation with offices in Jersey, Channel Islands, to form Deluge, LLC, a Massachusetts limited liability company. The Operating Agreement provides that Kanter owns 33.33%, and Portogon owns 66.66% of Deluge, LLC. The Operating Agreement also provides that Kanter is the sole manager and that the registered offices of Deluge, LLC are located at 109 State Street, Boston, MA 02109. *See Affidavit of Scott A. Kanter (Kanter Aff.)*, ¶ 2.

On June 10, 1997, a ground lease to 44.19 acres in Brentwood, New Hampshire, and rights to the Brentwood Spring, a natural spring water source, were transferred to Deluge, LLC. *Kanter Aff.* ¶ 3. Between June 10, 1997 and the present, the primary business of Deluge has been, and continues to be the supply of natural spring water from the Brentwood Spring, to which Deluge has exclusive rights under the ground lease. The current ground lease runs through September 30, 2006, and is subject to four successive 10 year extensions. *Kanter Aff.* ¶ 4. The Brentwood Spring is currently a profitable water source, supplying water to numerous third party vendors under long-term contracts, including, among others, Royal Ahold and Ahold USA, which owns Stop & Shop locally, among other businesses. *Kanter Aff.* ¶ 5.

Although he is neither a Member nor manager of Deluge, LLC under the Operating Agreement, Werner, who had been a director of Deluge, Inc., but never had any ownership interest in that company, has been managing the day-to-day operations of Deluge, LLC, conditioned upon and with the obligation to report regularly to Kanter regarding the operations

BO1 15641761.1

of the business. At no time did Kanter delegate any ownership interest to Werner or any written management authority under the Deluge, LLC Operating Agreement. Werner, therefore, has been acting akin to an employee at will, subject to removal at any time. *Kanter Aff.* ¶ 6.

Beginning in early 2001, Werner began to delay providing financial information to Kanter related to Deluge, LLC and the Brentwood Spring. Requests by Kanter for balance sheets, income statements and detailed general ledgers for Deluge, LLC in May and June 2001 went unanswered, and Werner claimed that he had his own accountant prepare the information. During this period, Werner also transferred the tax accounting for Deluge, LLC to a firm in New Hampshire. Throughout this period, Kanter continued to demand detailed financial information regarding the business, and Werner refused to provide this information. *Kanter Aff.* ¶ 8.

Moreover, unknown to Kanter at the time, Werner undertook efforts to take control of the profits emanating from the Brentwood Spring by seeking to move the ownership and management of Deluge, LLC to himself and his own operating company, L&C Spring Waters of New England, LLC ("L&C"). *Kanter Aff.* ¶ 9. Specifically, on February 20, 2002, Werner executed an Assignment and Contribution Agreement by and between Werner, Portogon and L&C, which purported to transfer a 66.66% interest in Deluge, LLC to L&C. Kanter was never informed of this agreement, nor did he sign any authorization for any transfer of an interest to Werner or L&C, as required under the Deluge, LLC Operating Agreement. In addition, although this Agreement purported to transfer an interest from Werner, Werner never owned any interest in Deluge, LLC. *Kanter Aff.* ¶ 10. At no time was Kanter informed of the terms of the offer by L&C to purchase or receive as interest from Portogon and/or Werner, as expressly provided in the Operating Agreement, nor was he offered the right to match that offer and acquire the transferred interest on the same terms. *Kanter Aff.* ¶ 11. Having unlawfully transferred an

ownership interest to L&C, Werner then transferred all of the management and operations of Deluge, LLC to L&C, including all of the day-to-day operations, documents, revenues and profits of the Brentwood Spring. *Kanter Aff.* ¶ 12.

Between February 2002 through the filing of this lawsuit, Kanter was provided virtually no information regarding the day-to-day operations of Deluge, LLC, L&C or the Brentwood Spring, other than summary financial information included within Deluge, LLC's publicly-filed annual tax returns and a summary annual financial statement. Despite repeated requests for legal documents, detailed financial statements and ledgers, and source documents such as bank statements, cancelled checks and credit card statements, Kanter was provided none of this information. Likewise, Werner refused to provide any documentation or support for various "expenses" charged by Werner or L&C to Deluge, LLC, including undocumented inter-company "transfers," unsupported "management fees," unauthorized "loans" and similar unidentified payments made by Deluge to Werner, Werner Enterprises and/or L&C. *Kanter Aff.* ¶ 13.

During late 2002 and into 2003, Kanter became increasingly concerned about his inability to obtain detailed financial information regarding the operations of Deluge, LLC and the Brentwood Spring from Werner. Promises to provide the requested information continued to go unmet, and Werner provided the bare minimum information to allow Kanter to prepare his own personal tax returns, and nothing more. *Kanter Aff.* ¶ 15. In addition, charges in the form of undocumented and unauthorized loans, transfers, management fees and miscellaneous expenses continued to be assessed by Werner, Werner Enterprises and/or L&C during this period. During 2003, Werner provided even less information than he had during 2002, and the communications between Werner and Kanter grew less and less frequent, despite repeated attempts by Kanter to schedule a meeting and review the detailed information of Deluge, LLC, L&C and Brentwood

Spring. Kanter also sought to obtain information directly from Werner's New Hampshire accountant, but was again provided only summary information without supporting detail. *Kanter Aff.* ¶ 16.

On December 31, 2003, Kanter demanded by certified letter that Werner provide him at Deluge's registered offices at 109 State Street, Boston, Massachusetts 02109, all documents related to the activities of L&C and Deluge, including but not limited to records of all bank accounts in either Deluge's or L&C's name, all account statements, credit card statements and receipts, signed contracts, purchase orders, paid and unpaid invoices, notes, drafts, checks, cancelled checks, payroll tax returns, Form 1099s, and any other documents or information in connection with the operations of Deluge. Kanter also demanded an Accounting as a Member of Deluge, LLC, and requested that Werner provide him with any legal basis upon which he claimed he was lawfully operating the business of Deluge, LLC, or not producing the requested information. No documents were produced and no legal justification for refusing to provide the requested information was provided. *Kanter Aff.* ¶ 18.

Between January 12, 2004 and March 10, 2004, Kanter once again demanded that the information requested on December 31, 2003 be produced by Werner. In response to these repeated requests, Werner produced eleven pages of documents concerning the unlawful transfer of Portogon's membership interest in Deluge, LLC to Werner. As to all of the other requested documents, including the documents concerning the operations of L&C and the Brentwood Spring, Werner confirmed that all such documents were in either his possession or the possession of L&C, but refused to produce them. *Kanter Aff.* ¶ 19.

## PROCEDURAL HISTORY

Concerned that the assets of his company were being stolen out from under him, Kanter filed an action on March 10, 2004, seeking a declaratory judgment, permanent injunctive relief, the appointment of a receiver, and damages, alleging that the defendants unlawfully had converted, and were continuing unlawfully to convert the assets and revenues of Deluge, LLC and the Brentwood Spring to their own personal use, in the form of unauthorized loans, advances, personal expenses, charges and transfers.  Kanter also alleged that the defendants had refused to provide an accounting of Deluge, LLC to Kanter, and refused to produce any detailed operating information, including bank statements, cancelled checks, contracts and credit card statements concerning the current and historical management and business of the Brentwood Spring.  *Kanter Aff.* ¶ 20.

Simultaneous with the filing of the complaint, Kanter also filed a motion for a preliminary injunction and for expedited discovery, seeking a court order requiring the production of the requested documents and sufficient controls over the business such that further assets would not be unlawfully converted and potential remedies lost.  The Court then referred the matter to Magistrate Judge Bowler, who set a hearing for April 1, 2004.  *Kanter Aff.* ¶ 21.

Only after Judge Bowler set a hearing on the matter did the defendants commence serious discussions about stipulating to an order providing for the relief requested by the plaintiffs.  Then, just prior to the hearing on April 1, 2004, the parties agreed to a stipulated preliminary injunctive order, attached as Exhibit B to Affidavit of Scott A. Kanter, which provided that the defendants would produce to the plaintiffs by April 7, 2004:

> a.   all financial information regarding the operations of Deluge, LLC and the Brentwood Spring, including source documents, for 2001, 2002 and 2003, and the first quarter of 2004.  Such documents shall include documents sufficient to ascertain the total water output of the Brentwood Spring from 2001 to the present, all revenues derived

from water delivered from the spring, all expenses charged, and all transfers of money of any kind; and

  b. all contracts or agreements with any third party regarding the supply of water from the Brentwood Spring, under which water has been supplied during the period 2001 to the present.

*Kanter Aff.* ¶ 22.

The order also provided that the defendants "shall establish a separate or dedicated accounting in the name of Deluge, LLC for all revenues received by or attributable to Deluge, LLC or the Brentwood Spring" and that the plaintiffs shall be provided access to and information regarding this accounting, including all deposits made on behalf of Deluge, LLC. *Kanter Aff.* ¶ 23.

In addition to these affirmative obligations to provide information to the plaintiffs, the order provided that the defendants are prohibited from making any payments on behalf of the Brentwood Spring, unless such payments are previously disclosed to Kanter and the payment is approved by Kanter. *Kanter Aff.* ¶ 24. The parties are also prohibited from altering, destroying or tampering in any way with any document related to Deluge, LLC, L&C Spring Waters of New England, LLC or the Brentwood Spring, including all documents reflecting the operations of, sale of water from, revenues received or payments made in connection with water originating from the spring.

On April 9, 2004, this Court entered the stipulated order as an order of the Court.

### **DEFENDANTS' FAILURE TO COMPLY WITH THE COURT'S ORDER**

Notwithstanding their agreement to the terms of the preliminary injunction, and the entry of the injunction as an order of the Court, the defendants have still delayed and refused to provide all of the information required by the preliminary injunction. Specifically, on April 8, 2004, after numerous discussions about the mechanics of producing the information, the defendants prepared several boxes of documents to be picked up by a courier selected by the

plaintiffs and delivered to Boston. *Kanter Aff.* ¶ 25. Shortly thereafter, the plaintiffs began reviewing the information.

The review of the information provided by the defendants confirmed several very troubling facts, as set forth more fully in the accompanying affidavit of Scott A. Kanter. First, it is clear that the documents include some, but not nearly all, of the information ordered by the Court to be produced. For example, no information at all for 2004 was provided by the defendants, as required by paragraph 1.a of the Court's Order, and many source documents for 2003 were missing, such as monthly bank statements, cancelled checks, paid invoices, legal bills, deposits and deposit slips with customer names listed were not provided. Most troubling was the fact that the information for 2001 through 2003 appears to have been very carefully analyzed and presented in a form designed to hide certain relevant information. For example, the basic general ledgers have not been produced, despite the fact that the defendants have admitted that this information exists in a simple electronic form. In short, it appears that substantial effort was undertaken to "package" the information, rather than producing it in the form it is kept in the ordinary course of business. This production appears designed to continue to hide the defendants' unlawful and unauthorized activities, which is of grave concern to the plaintiffs. *Kanter Aff.* ¶ 26.

Notwithstanding the gaps noted above, the defendants also failed to produce any of the information required by paragraph 1.b. of the Court's order, relating to contracts for the water derived from the Brentwood Spring. In fact, in a letter dated April 23, 2004 counsel for the defendants asserted that no such documents existed. Only after it was pointed out to counsel that such an assertion made no sense – unless the water was being given away for free – did counsel admit that contracts did exist and produce certain documents that he contends relate to the

Brentwood Spring. There has been no confirmation, however, that these contracts represent the universe of contracts and agreements concerning the Brentwood Spring. Absent a confirmation made to the Court under penalties of perjury that all contracts have been identified and produced, will the plaintiffs be satisfied that the defendants have met their obligations under Paragraph 1.b. of the Court's order. *Kanter Aff.* ¶ 27.

Finally, the defendants have failed to confirm that a separate accounting has been established for Deluge, LLC and the Brentwood Spring, nor have they provided any accounting for current production from the Brentwood Spring, as required in paragraph 2 of the Court's Order. Without this information, the plaintiffs have no basis upon which to monitor the current activities of the business and the Spring, or to assure that revenues are not being diverted to other Werner-controlled business or improper expenses charged to the business. *Kanter Aff.* ¶ 28.

Equally important to the Court and to the plaintiffs, the documents that have been produced provide a complete vindication and support for the concerns that led to the filing of the present lawsuit. Although still woefully incomplete, even the limited documents produced demonstrate that the defendants have converted hundreds of thousands of dollars of Deluge, LLC's assets, derived from the Brentwood Spring, in the form of personal travel, loans, advances and similar transfers. For example, Werner appears to have charged travel to Hawaii, Europe, the Middle East and throughout the United States to Deluge, LLC and the assets of the Brentwood Spring. This travel in the last several years has amounted to thousands of dollars *per month*. Similarly, the documents show tens of thousands of dollars in annual "management fees" in addition to Werner's "salary." None of these charges were approved by the members of Deluge, LLC and all of these "expenses" are subject to recoupment by Deluge, LLC and its members. *Kanter Aff.* ¶ 30.

The limited information produced concerning the contracts that govern the Brentwood Spring paints a similarly troubling picture. These contracts demonstrate that the Brentwood Spring is the exclusive source for tens of millions of gallons of water, with associated revenues in the hundreds of thousands of dollars, but these revenues and profits do not appear to be flowing through the Deluge, LLC bank account, the exclusive lessee of the Spring. For example, the agreement with Suiza provides that up to 50,000,000 gallons annually shall come from Brentwood Spring for a term of seven years. Based on the price for the water in the contract, this single relationship translates to up to a maximum of $750,000 of revenue to the Brentwood Spring. Nonetheless, in their efforts to divert this revenue, this contract for the production and delivery of water from the Brentwood Spring was executed by the defendants in the name of entities other than Deluge, LLC. Moreover, consistent with this conversion, virtually all of the monies in the Deluge, LLC bank account were drained in 2002, and deposits, including those from the contract (a monthly $25,000 payment), were directed to a non-Deluge, LLC account. These contracts were never shown to Kanter. *Kanter Aff.* ¶ 32.

Finally, the limited information produced also raises an additional significant concern. Specifically, the documents reflect payments to attorneys for work purportedly conducted on behalf of Deluge, LLC, amounting to thousands of dollars, but no supporting documents, including the legal invoices to support these payments. The lawyers that received these payments are now either representing L&C or Werner, raising a significant concern that legal services in connection with the defendants' activities to convert assets, including the drafting of agreements with customers of the Brentwood Spring, and the attempted transfer of interests from Deluge, LLC to L&C, were paid for by Deluge, LLC. The problems with this scenario, if true, should be obvious. *Kanter Aff.* ¶ 33.

In an effort to provide the defendants an opportunity to produce the information ordered by the Court and avoid the necessity of the present motion, on April 28, 2004 and May 3, 2004 counsel for the plaintiffs wrote to counsel for the defendants and demanded the information. Plaintiffs' counsel also had several telephone conversations with defendants' counsel in which he was told that the defendants "were working on it" but "had other matters to attend to." *Kanter Aff.* ¶ 34. In addition, the plaintiffs requested that a separate bank account be established for Deluge, LLC to receive the proceeds of the Brentwood Spring, in order to effectuate the Court ordered dedicated accounting in Paragraph 2. Plaintiffs contended that absent a separate account, there could be no compliance with the Court's order and no assurance that the unauthorized and unlawful conduct of the defendants had ceased to occur. Despite this correspondence, no accounting nor any information for 2004 has been provided. In addition, the defendants have refused to establish a separate bank account, despite admitting that such an account is "probably a good idea." Consequently, unable to effect compliance with the Court's order, on May 5, 2004 counsel for plaintiffs notified the defendants that plaintiffs would be making the present motion. *Kanter Aff.* ¶ 35.

## ARGUMENT

"Federal courts have the inherent power to impose submission to their lawful mandates and to achieve the orderly disposition of cases." Securities and Exchange Comm'n v. Pinez, 52 F. Supp. 2d 205, 209 (D. Mass. 1999), citing Chambers v. Nasco, Inc., 501 U.S. 32, 43-44 (1991). That power includes the power to find a defendant in civil contempt of the court's prior orders and to require compliance through any equitable remedy the Court believes will accomplish that result. John T. v. Delaware Co. Intermediate Unit, 318 F.3d 545, 554 (3d Cir. 2003) ("District courts hearing civil contempt proceedings are afforded broad discretion to

fashion a sanction that will achieve full remedial relief."), citing McComb v. Jacksonville Paper Co., 336 U.S. 187, 191, 192 (1949). In addition, the Court may impose a fine to compensate a complainant for any losses suffered or expenses incurred as a result of noncompliance with a court order, including attorney's fees. SEC v. Pinez, 52 F. Supp. 2d at 209, citing International Union, UMWA v. Bagwell, 512 U.S. 821, 826-27 (1994); Aqua Grill, Inc. v. S.T.F.B. Corp., 1997 WL 563305, at *6 (S.D.N.Y. Sept. 8, 1997) (awarding attorney's fees and all payments made to the violating party); Associated General Contractors of Cal. v. San Francisco Unified School Dist., 544 F. Supp. 845, 847 (N.D. Cal. 1982) (awarding all costs in connection with contempt motion, including attorney's fees).

Here, the injunction order entered by the Court on April 9, 2004 could not have been clearer in describing the information required to be provided and the actions required to be taken by the defendants. There is also no dispute that the defendants have failed to comply with the order. They have failed to provide any financial information for 2004 and have failed to provide a dedicated accounting for the revenues and expenses attributable to the Brentwood Spring, as required by the Order. This conduct appears designed specifically to allow the defendants to continue to act unlawfully by maintaining control over and diverting the business and assets of the Brentwood Spring to their own use, with the very real possibility that these continued actions will deprive the plaintiffs of an adequate remedy should they prevail in this case. The only means to rectify these violations is to order immediate compliance and to order a dedicated and separate bank account for the receipt of the revenues of the Brentwood Spring, with unfettered control over those funds removed from the defendants.

"Civil contempt occurs when a party fails to comply with a court order." General Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1379 (9th Cir. 1986). Moreover, "if complainant makes a

showing that respondent has disobeyed a decree in complainant's favor, and that damages have resulted to complainant thereby, complainant is entitled as of right to an order in civil contempt imposing a compensatory fine. . . . The court has no discretion to withhold the appropriate remedial order." Parker v. United States, 153 F.2d 66, 70 (1st Cir. 1946). Additionally, "[t]here is no scienter requirement for a finding of civil contempt." AMF, Inc. v. Jewett, 711 F.2d 1096, 1104 (1st Cir. 1983). In light of the defendants' clear violation of the Court's injunction, an order of civil contempt must be issued.

## CONCLUSION

Wherefore, the Court should find the defendants in civil contempt of the Court's prior injunctive order, require the defendants to pay plaintiffs' costs associated with bringing this motion, including attorneys' fees, and order the establishment of a separate bank account for the receipt of the proceeds of the Brentwood Spring, over which a receiver should be appointed to monitor and approve all deposits and withdrawals.

Respectfully submitted,

SCOTT A. KANTER and DELUGE, LLC,
By their attorneys,

_____
Christopher F. Robertson (BBO No. 642094)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800
Telecopier:   (617) 946-4801

Date: May 7, 2004

BO1 15641761.1