UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCOTT A. KANTER and DELUGE, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SCOTT J. WERNER, WERNER ENTERPRISES and L&C SPRING WATERS OF NEW ENGLAND, LLC (f/k/a L&C SPRING WATERS OF NEW ENGLAND HOLDING COMPANY, LLC.),<br><br>Defendants. | CIVIL ACTION NO. 04-10489 (RCL) |

## AFFIDAVIT OF SCOTT A. KANTER

I, SCOTT A. KANTER, declare as follows:

1. I am a Massachusetts certified public accountant with over twenty years of experience, and I am the manager and a member of Deluge, LLC, a Massachusetts limited liability company. I make this affidavit on the basis of my own personal knowledge of the facts set forth herein and could testify competently thereto if called to do so.

2. On April 15, 1997, I entered into an Operating Agreement with Portogon Investments, SA, a Panamanian corporation with offices in Jersey, Channel Islands, to form Deluge, LLC, a Massachusetts limited liability company. The Operating Agreement, a true and accurate copy of which is attached as Exhibit A, provides that I own 33.33%, and Portogon owns 66.66% of Deluge, LLC. The Operating Agreement also provides that I am the sole manager and that the registered offices of Deluge are located at 109 State Street, Boston, MA 02109.

3. On June 10, 1997, Deluge, Inc., a Massachusetts corporation whose shareholders were myself and Portogon, merged into Deluge, LLC, with Deluge, LLC remaining as the

BO1 15642157.1

surviving entity. As part of this transaction, a ground lease to 44.19 acres of real property in Brentwood, New Hampshire, and rights to Brentwood Spring, a natural spring water source, were transferred to Deluge, LLC. In addition, certain renewable contracts to supply water to third party resellers and an affiliated company were transferred from Deluge, Inc. to Deluge, LLC. The ground lease had been acquired by Deluge, Inc. in 1996.

4. Between June 10, 1997 and the present, the primary business of Deluge, LLC has been, and continues to be the supply of natural spring water from the Brentwood Spring, to which Deluge, LLC has exclusive rights under the ground lease. The current ground lease runs through September 30, 2006, and is subject to four successive 10 year extensions.

5. The Brentwood Spring is currently a revenue-generating water source, supplying water to numerous third party vendors under long-term contracts, including, among others, Royal Ahold and Ahold USA, which owns Stop & Shop locally, among other businesses.

6. Although he is neither a Member nor manager of Deluge, LLC under the Operating Agreement, Werner, who had been a director of Deluge, Inc. but never had any ownership interest in that company, has been managing the day-to-day operations of Deluge, LLC, conditioned upon and with the obligation to report regularly to me regarding the operations of the business. At no time did I delegate any ownership interest to Werner or any written management authority under the Deluge, LLC Operating Agreement. Werner, therefore, has been acting akin to an employee at will, subject to removal at any time.

7. Subsequent to the formation of Deluge, LLC in 1997, I prepared the initial 1997 annual corporate tax return for Deluge, LLC. The 1998 and 1999 tax returns were then prepared by an accounting firm based in Massachusetts. In connection with preparing these returns, I requested each year that Werner provide the accountants with the annual financial information

for Deluge, LLC, including revenues, expenses, assets and liabilities. Although he did not provide any detailed information underlying the summary results, through 2000 Werner provided sufficient information for the accountants to prepare the company's tax returns, and in each of the years 1997, 1998 and 1999, Deluge, LLC reported a profit.

8.  Beginning in May 2001, when the company's 2000 tax returns were being processed by a separate accounting firm in New Hampshire retained by Werner, Werner began to delay providing any financial information related to Deluge, LLC and the Brentwood Spring to me. For example, requests by me in May and June 2001 for balance sheets, income statements, detailed general ledgers and "source documents" for Deluge, LLC went unanswered, or were met with unkept promises to provide the information. True and accurate copies of this correspondence are attached as Exhibit B.

9.  During 2000 and 2001 it appears based on some information I have obtained that Werner commenced and implemented a plan to take control of the profits emanating from the Brentwood Spring by seeking to move the management of Deluge, LLC to his own operating company, L&C Spring Waters of New England, LLC.

10.  On February 20, 2002, Werner and Portogon executed an Assignment and Contribution Agreement ("Assignment Agreement") by and between Werner, Portogon and L&C. A true and accurate copy of the Assignment Agreement is attached as Exhibit C. This agreement purported to transfer Portogon's and Werner's interest in Deluge, LLC to L&C. I was never informed of this agreement, nor did I sign any authorization for Portogon's transfer of its 66.66% interest to Werner or L&C, as required under the Deluge, LLC Operating Agreement. In addition, although this Agreement purported to transfer an interest from Werner, Werner never owned any interest in Deluge, LLC.

11. In addition, Paragraph 12.3 of the Operating Agreement provides that any proposed transfer of an interest by one Member to a third-party creates a right of first refusal to the other Member, in this case myself. At no time was I informed of the terms of the offer by L&C to purchase or receive an interest from Portogon and/or Werner as required by the Operating Agreement, nor was I offered the right to match that offer and acquire the transferred interest on the same terms.

12. Subsequent to the execution of the Assignment and Contribution Agreement in February 2002, Werner further engaged in efforts to limit my access to and understanding of the detailed operating information regarding the business, and, upon information and belief, has systematically transferred the management and operations of Deluge, LLC to L&C since that time. All of the day-to-day operations, documents, contracts, revenues and profits of the Brentwood Spring are currently under the control of the Defendants, without any written authorization from me as required in the Operating Agreement.

13. Since February 2002, Werner has provided virtually no detailed information or source documents regarding the day-to-day operations of Deluge, LLC, L&C or the Brentwood Spring to me. Despite repeated requests beginning in February 2002, I have been provided no Accounting concerning various expenses charged by Werner and L&C to Deluge, LLC, management fees charged by Defendants to Deluge, LLC without my written authorization, or other unidentified payments made by Deluge to Werner and/or L&C. True and accurate copies of requests for information are attached as Exhibit D.

14. On several occasions during 2002 and 2003, Werner again "promised" me that he would cooperate in providing the detailed financial information and source documents that had been requested, but failed to produce the requested information. For example, during several

conversations, Werner stated that he would produce detailed general ledgers and certain source documents, but then produced only minimal summary information. See Exhibit D.

15. During late 2002 and into 2003, I became increasingly concerned about my continued inability to obtain detailed financial information regarding the operations of Deluge, LLC and the Brentwood Spring from Werner. Promises to provide the requested information continued to go unmet, and Werner provided the bare minimum information to allow me to prepare my own personal tax returns, and nothing more.

16. During 2003, Werner provided even less information than he had during 2002, and my ability to reach Werner became more and more difficult, despite repeated attempts to reach him, schedule a meeting, and review the status of Deluge, LLC, L&C and Brentwood Spring. I also sought to obtain information directly from Werner's New Hampshire accountant, but was again provided only summary information without supporting detail or source documents.

17. Although Werner has stated to me and third parties on several occasions that Deluge, LLC and the Brentwood Spring are profitable, since 2000 there have been no distributions made by Deluge, LLC to its Members, including to me. Specifically, since moving the accounting from Massachusetts and preventing me from reviewing source documents, the expenses and fees charged to Deluge have equaled or closely equaled Deluge's revenue in 2000 through 2002, resulting in no distributions in 2001, 2002 or 2003 to me or Portogon as Members in the LLC. I have never been provided detailed financial information or support for these mysterious and undocumented "expenses" and "fees", and no explanation has ever been given for the basis upon which they were charged to Deluge, LLC.

18. On December 31, 2003, I demanded by certified letter that Werner provide me at

Deluge's registered offices at 109 State Street, Boston, Massachusetts 02109, all documents related to the activities of L&C and Deluge, including but not limited to records of all bank accounts in either Deluge's or L&C's name, all account statements, credit card statements and receipts, signed contracts, purchase orders, paid and unpaid invoices, notes, drafts, checks, cancelled checks, payroll tax returns, Form 1099s, and any other documents or information in connection with the operations of Deluge. I also demanded an accounting as a Member of Deluge, LLC, and requested that Werner provide me with any legal basis upon which he claimed he was lawfully operating the business of Deluge, LLC, or not producing the requested information. A true and accurate copy of this letter is attached as Exhibit E. No documents were produced and no legal justification for refusing to provide the requested information was provided.

19. Between January 12, 2004 and March 10, 2004, I continued to demand that the information requested on December 31, 2003 be produced by Werner and/or L&C. True and accurate copies of these letters are attached as Exhibit F. In response to these repeated requests, Werner produced eleven pages of documents concerning the unlawful transfer of Portogon's membership interest in Deluge, LLC to L&C. As to all of the other requested documents, including the documents concerning the operations of L&C and the Brentwood Spring, Werner confirmed that all such documents were in either his possession or the possession of L&C, but refused to produce them.

20. Concerned that the assets of Deluge LLC were being stolen out from under me, I filed this action on March 10, 2004, seeking a declaratory judgment, permanent injunctive relief, the appointment of a receiver, and damages, alleging that Werner and L&C unlawfully had converted, and were continuing unlawfully to convert the assets and revenues of Deluge LLC

BO1 15642157.1

and the Brentwood Spring to their own personal use, in the form of unauthorized loans, advances, personal expenses, charges and transfers. I also alleged that the Defendants had refused to provide an accounting of Deluge, LLC to me, and refused to produce any detailed operating information, including bank statements, cancelled checks, contracts and credit card statements concerning the current and historical management and business of the Brentwood Spring.

21. Simultaneous with the filing of the complaint, my counsel also filed a motion for a preliminary injunction and for expedited discovery, seeking a court order requiring the production of the requested documents and sufficient controls over the business such that further assets would not be unlawfully converted and potential remedies lost. The Court then referred the matter to Magistrate Judge Bowler, who set a hearing for April 1, 2004.

22. Only after Judge Bowler set a hearing on the matter did the defendants commence serious discussions about stipulating to an order providing for the relief requested in the complaint and motion. Then, just prior to the hearing on April 1, 2004, the parties agreed to a stipulated preliminary injunctive order, which provided that the defendants would produce to the plaintiffs by April 7, 2004:

    a.    all financial information regarding the operations of Deluge LLC and the Brentwood Spring, including source documents, for 2001, 2002 and 2003, and the first quarter of 2004. Such documents shall include documents sufficient to ascertain the total water output of the Brentwood Spring from 2001 to the present, all revenues derived from water delivered from the spring, all expenses charged, and all transfers of money of any kind; and

    b.    all contracts or agreements with any third party regarding the supply of water from the Brentwood Spring, under which water has been supplied during the period 2001 to the present.

A true and accurate copy of the stipulation and order, and the confirmation of the Court's entry of the order, is attached as Exhibit G.

23. The Court's order also provided that the defendants "shall establish a separate or dedicated accounting in the name of Deluge LLC for all revenues received by or attributable to Deluge LLC or the Brentwood Spring" and that the plaintiffs shall be provided access to and information regarding this accounting, including all deposits made on behalf of Deluge LLC. In conjunction with the Court's entry of the order, the parties discussed establishing a separate bank account to effectuate the dedicated accounting ordered by the Court. Recognizing that such an account was "a good idea", the defendants' counsel orally agreed that such an account would be established within a week to ten days of entry of the Order.

24. In addition to these affirmative obligations to provide information to the plaintiffs, the Order provided that the defendants are prohibited from making any payments on behalf of the Brentwood Spring, unless such payments are previously disclosed to me and the payment is approved by me. The defendants were also required to establish a $5,000 per month escrow regarding unauthorized "salary" payments previously made to Werner.

25. On April 8, 2004, after numerous discussions about the mechanics of producing the information, the Defendants prepared several boxes of documents to be picked up in New Hampshire by a courier selected by the plaintiffs and delivered to Boston.

26. Over the course of the following week, I personally reviewed the information provided by Defendants. This review confirmed that the documents include some, but not nearly all, of the information ordered by the Court to be produced. No information at all for 2004 was provided by the Defendants, as required by paragraph 1.a of the Court's Order. In addition, many source documents for 2001 through 2003, such as monthly bank statements, cancelled checks, paid invoices, legal bills, deposits and deposit slips with customer names listed were not provided. Of particular concern to me as a certified public account with twenty years of

BO1 15642157.1

experience reviewing financial statements and related supporting documents, is the fact that the information for 2001 through 2003 appears to have been very carefully analyzed and presented in a form designed to hide certain relevant information. For example, the basic general ledgers have not been produced, despite the fact that the defendants have admitted that this information exists in a simple electronic form. Reviewing the information, it appears to me that substantial effort has been undertaken to "package" the information, rather than producing it in the form it is kept in the ordinary course of business. This production has only heightened my concern that the Defendants are actively hiding unlawful and unauthorized conduct.

27. The defendants also failed to produce any of the information required by paragraph 1.b. of the Court's order, relating to contracts for the water derived from the Brentwood Spring. In fact, in a letter dated April 23, 2004 counsel for the defendants asserted that no such documents existed. A true and accurate copy of this letter is attached as Exhibit H. Only after it was pointed out to counsel that such an assertion made no sense – unless the water was being given away for free – did counsel admit that contracts did exist and produce certain documents that Werner contends relate to the Brentwood Spring. There has been no confirmation, however, that these contracts represent the universe of contracts and agreements concerning the Brentwood Spring, and it appears from the documents that have been produced that there are additional agreements that have not been disclosed.

28. The defendants have failed to confirm that a separate accounting has been established for Deluge LLC and the Brentwood Spring, nor have they provided any accounting, including any confirmation of deposits, for current production from the Brentwood Spring, as required in paragraph 2 of the Court's Order. On April 23, 2004, the defendants confirmed that they had not provided the information, stating only that they would provide it "as soon as

possible." See Exhibit H. Without this information, I have no basis upon which to monitor the current activities of the business and the Spring, or to assure that revenues are not being diverted to other Werner-controlled business or improper expenses charged to the business.

29. The defendants have also failed to obtain approval from me for any of the day-to-day expenses of the Spring, which they are required to do under the Order. Consequently, I have no ability to determine if improper payments are continuing to be made, nor have I had the ability to assess the business justification for any such expenses.

30. The documents that have been produced provide a complete vindication and support for my concerns that led to the filing of the present lawsuit. Although still woefully incomplete, even the limited documents produced demonstrate that the Defendants have converted hundreds of thousands of dollars of Deluge LLC's assets, derived from the Brentwood Spring, in the form of personal travel, loans, advances and similar transfers. For example, the documents show that Werner has charged travel to Hawaii, Europe, Middle East and throughout the United States to Deluge LLC, utilizing the assets of the Brentwood Spring. This travel in the last several years has amounted to thousands of dollars *per month*. Also, in connection with these trips, there is evidence of thousands of dollars of attendant expenses and transfers, including cash withdrawals in those locations. Similarly, the documents show tens of thousands of dollars in annual "management fees" in addition to Werner's "salary." None of these charges were approved by me.

31. Analyzing the data that has been produced, it appears that Werner's personal expenses, including travel, management fees and salary have risen dramatically as a percentage of the revenues of the Brentwood Spring since 2001. For example, these expenses constituted only 15% of revenues in 1999, but have risen to nearly 40% in 2002. In 2002 alone, Werner

charged over $200,000 in apparent personal expenses, salary and management fees to the Company. This figure also does not include the misappropriation of revenues that may have been derived from the Brentwood Spring but not credited to Deluge LLC, despite Deluge LLC being the exclusive lessee of the Spring. These revenues also appear to be in the hundreds of thousands of dollars.

32.     The limited information produced concerning the contracts that govern the Brentwood Spring paints a similarly troubling picture. These contracts demonstrate that the Brentwood Spring is the exclusive source for tens of millions of gallons of water, with associated revenues in the hundreds of thousands of dollars, but these revenues and profits do not appear to be flowing through the Deluge LLC bank account, the exclusive lessee of the Spring. For example, the agreement with Suiza provides that up to 50,000,000 gallons annually shall come from Brentwood Spring for a term of seven years. Based on the price for the water in the contract, this single relationship translates to up to a maximum of $750,000 of revenue to the Brentwood Spring. Nonetheless, in their efforts to divert this revenue, this contract for the production and delivery of water from the Brentwood Spring was executed by the defendants in the name of entities other than Deluge LLC. A true and correct copy of the contract is attached as Exhibit I. Consistent with this conversion, I have verified that virtually all of the monies in the Deluge LLC bank account were drained in 2002, and simultaneously deposits, including those from the contract (a monthly $25,000 payment), were directed to a non-Deluge LLC account. These contracts were never shown to me and appear to confirm an intent to convert the business of Deluge LLC to other entities in an effort to deprive me of my rightful ownership interests in the Brentwood Spring. I am concerned that if this conduct is allowed to continue,

and it appears that it is continuing, there may be no assets left under the control of Deluge LLC, which appears to have been defendants' ultimate plan in connection with the Spring.

33. Finally, the limited information produced also raises an additional significant concern. Specifically, the documents reflect payments to attorneys for work purportedly conducted on behalf of Deluge LLC, amounting to thousands of dollars, but no supporting documents, including the legal invoices to support these payments. The lawyers that received these payments are now either representing L&C or Werner, raising a significant concern that legal services in connection with the defendants' activities to convert assets, including the drafting of agreements with customers of the Brentwood Spring, and the attempted transfer of interests from Deluge LLC to L&C, were paid for by Deluge LLC. The problems with this scenario, if true, should be obvious.

34. In an effort to provide the defendants an opportunity to produce the information ordered by the Court and avoid the necessity of the present motion, subsequent to their admission that no 2004 information had been provided, my counsel wrote to counsel for the defendants on April 28, 2004 and May 3, 2004, demanding the court-ordered information. Copies of these letters are attached as Exhibit J. My counsel also had several telephone conversations with defendants' counsel in which he was told that the defendants "were working on it" but they "had other matters to attend to", and would provide the information as soon as possible. These conversations echoed the conversations that I had been having for months with the defendants and evidence the same attempted run-around that forced me to file the present litigation.

35. In addition to the documents and accounting, I requested that a separate bank account be established for Deluge LLC to receive the proceeds of the Brentwood Spring, in order to effectuate the Court ordered dedicated accounting in Paragraph 2. I firmly believe that absent

a separate account, there can be no compliance with the Court's order and no assurance that the unauthorized and unlawful conduct of the Defendants had ceased to occur. Despite the Court's Order, no accounting nor any information for 2004 has been provided. In addition, the Defendants have refused to establish a separate bank account, despite admitting that such an account is "probably a good idea" and agreeing to do so. Consequently, unable to effect compliance with the Court's order, I have been forced, at unnecessary expense and effort, to bring the present motion for contempt.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

    Executed this 6th day of May, 2004 at Boston, Massachusetts.

_____
SCOTT A. KANTER

BO1 15642157.1