# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCOTT A. KANTER and DELUGE, LLC, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CIVIL ACTION NO. 04-10489 (RCL) |
| v. ) | |
| ) | |
| SCOTT J. WERNER, WERNER ) | |
| ENTERPRISES and L&C SPRING ) | |
| WATERS OF NEW ENGLAND, LLC (f/k/a ) | |
| L&C SPRING WATERS OF NEW ) | |
| ENGLAND HOLDING COMPANY, LLC.), ) | |
| ) | |
| Defendants. ) | |
| ) | |

## SUPPLEMENTAL AFFIDAVIT OF SCOTT A. KANTER

I, SCOTT A. KANTER, declare as follows:

1.      I submit this supplemental affidavit in connection with the pending motion for contempt and in support of the plaintiffs' motion to appoint a receiver.  I make this affidavit on the basis of my own personal knowledge of the facts set forth herein and could testify competently thereto if called to do so.

2.      I submit this affidavit to bring to the Court's attention the continuing and persistent contempt of the Court's prior injunctive order by the defendants.  Despite specific disclosure and approval requirements in the Court's order regarding revenues and expenses attributable to the Brentwood Spring, defendants have continued to violate those requirements and operate the Brentwood Spring as their personal asset.  Plaintiffs have repeatedly demanded that the defendants comply with these disclosure and approval requirements, yet defendants have refused.  Defendants have continued to transfer assets from the Brentwood Spring without any disclosure or approval, and recently threatened to interrupt and damage the business of the

Spring in light of the present litigation and the demands made by plaintiffs to regain some measure of control of the Spring from defendants. He also has failed to pay bills timely, further threatening the regular operations of the business.

3.      Werner has continued to make significant unauthorized "loans" to himself during the pendency of this action and in direct violation of the Court's order. Based on the limited information that has been provided, it is clear that Werner continues to view the Brentwood Spring as he personal asset, and does not believe he has any obligation, despite the Court's order to the contrary, to disclose and obtain approval for these transactions.

4.      Since the entry of the Court's Order on April 9, 2004, plaintiffs have made multiple demands upon the defendants to obtain access to the bank accounts that govern the cash receipts of the Brentwood Spring, and from which expenses are paid. Defendants have continually refused to provide such access, and have refused to provide any disclosure of the cash activity in those bank accounts. Thus, despite the Court's requirement of a dedicated accounting, plaintiffs have no idea what transactions have occurred or where the cash has gone. Defendants have also failed to provide the original books of account and source documents regarding the flows of cash into and out of the business.

5.      In addition, the limited information that has been provided indicates that unauthorized and improper use of the Brentwood Spring continues. Specifically, documents provided by the Defendants demonstrate that, despite Deluge LLC's exclusive right to the water from the Brentwood Spring, Werner has been taking water from the Spring for the benefit of other companies unaffiliated with Deluge LLC, without making any payment to Deluge LLC for that water. Worse still, Werner has been charging the expenses associated with the removal of that water to Deluge LLC, further dissipating the assets of the company. This unlawful activity

2

threatens the financial stability of Deluge LLC and cannot be allowed to continue.

6.      Without the active intervention of the Court and a finding of contempt, defendants will simply continue to ignore the Court's prior order and operate the Spring as they have in the past, with no accountability to the plaintiffs as required under the Operating Agreement.  I have now attempted to gain some measure of control over the Spring for over six months, filing the present lawsuit and obtaining a Court order.  It has made no difference, as defendants continue to convert the assets of the Spring to the likely permanent detriment of the members, including myself.

7.      More specifically, on April 9, 2004, the Court entered a stipulated preliminary injunction order requiring the defendants to produce to the plaintiffs all financial information and source documents regarding the operations of Deluge LLC and the Brentwood Spring for 2001, 2002 and 2003, and the first quarter of 2004.  The Court's April 9, 2004 Order also required defendants to "establish a separate or dedicated accounting in the name of Deluge LLC for all revenues received by or attributable to Deluge LLC or the Brentwood Spring."  The Court ordered that the plaintiffs "shall be provided access to and information regarding this accounting, including all deposits made on behalf of Deluge LLC."  The defendants have not provided any bank account information from April 2004 through the present, and in addition have not provided plaintiffs a cash transaction report for those periods.

8.      The Court further ordered that the defendants are prohibited from making any payments on behalf of Deluge, LLC or attributable to Deluge, LLC or the Brentwood Spring, unless such payments are previously disclosed to the plaintiffs and the payment is approved by the plaintiffs.  In addition, $5,000 per month was to be placed in escrow, pending the resolution

of this matter, representing previous fees and salaries that Werner had been paying himself from the proceeds of the Brentwood Spring.

9.      Since the date of entry of the Court's order on April 9, 2004, the defendants have ignored the majority of the provisions of the Court's Order, in contempt of the Order.  First, while the defendants have produced certain information regarding the historical operations of the Brentwood Spring, they have provided none of the "source documents" referenced in the Court's order, including general ledger entries for basic cash activity in the accounts attributable to the Brentwood Spring.  Without this basic information, there is no possible way to track the inflows and outflows of cash attributable to the Spring.  Rather than produce the source documents, it appears that defendants have expended significant time and effort "scrubbing" the data from the company's Peachtree data files onto Excel spreadsheets, in an effort to mask the thousands of dollars in improper payments by Werner to himself.  These spreadsheets do not in any sense of accepted accounting principles provide adequate or credible information regarding the operations of the business, and appear to be specifically designed to hide where the true deposits and expenses are being made.

10.      In addition to the defendants' failure to produce complete historical information as ordered by the Court, the defendants have failed to provide evidence of the dedicated accounting ordered by the Court, and have not provided any information regarding the total cash receipts attributable to the Brentwood Spring since the date of entry of the Court's order. Although the defendants recently provided some information regarding May 2004 financials, no information was provided for April 2004 and the May 2004 information that was provided was "scrubbed" in a similar fashion to the historical information.  There was no information provided regarding the basic cash activity, as ordered by the Court, for April or May 2004.

4

11.     Despite the Court's order that all expenses were to be disclosed to plaintiffs and approved, only five payments have been disclosed and approved by the plaintiffs.  Although some of the records provided show payments every day in connection with the Brentwood Spring, none of these expenses have been contemporaneously disclosed to or approved by plaintiffs.  Defendants have provided no explanation for this flagrant violation of the Court's order.

12.     Even more troubling, the limited information that has been provided demonstrates that the defendants' unlawful and unauthorized transfers of cash from Deluge LLC and the Brentwood Spring continues unabated.  For example, it appears that over the last two months, there have been tens of thousands of dollars in loans, advances and other payments to Defendants from Deluge LLC or attributable to the assets of the Brentwood Spring, none of which previously had been disclosed to or approved by the plaintiffs.  This activity has occurred in clear violation of the Court's order.  It also appears that professional fees, including legal fees, have been paid from the assets of the Spring, in clear violation of the Court's order and the agreements among the parties.

13.     Defendants have also recently confirmed that no escrow has been established to set aside $5,000 per month as required by the Court's order.  While they have provided various excuses for the failure to do so, none of these excuses justified their willful contempt of the Court's order.

14.     Finally, recent information that has come into my possession indicates that significant amounts of water are being pumped from the Brentwood Spring for companies in the control of Werner, but no payment is being made to Deluge LLC for that water.  As stated in the Verified Complaint in this action, Deluge LLC has an exclusive lease to the Brentwood Spring

BO1 15650675.1

and is entitled to receive payment for all water pumped from the Spring.  Werner is willfully violating this exclusive lease by providing free water to his other companies, to the substantial detriment of Deluge LLC.

15.    In short, despite the clear restrictions and requirements the Court imposed in its April 9, 2004 Order, Werner has been operating the Brentwood Spring in complete disregard of those restrictions and requirements, in exactly the same fashion as before the Court's entry of its Order.  This conduct continues to cause me harm as a member of Deluge LLC, with a substantial likelihood that such harm will be unrecoverable.  The need for immediate relief is particularly important because each day that the contempt continues the assets of Deluge LLC are being stolen out from under its members, and the Summer months are the busiest of the season.  Thus, the damage that is occurring is most significant at this time.

16.    Scott Werner's affidavit in opposition to the motion for contempt is simply untrue.  He has never provided to me complete financial information for the Brentwood Spring, but has engaged in tremendous effort to hide the unlawful conversion of assets that has been ongoing for years.  His latest attempts to "scrub" the information he is provided continues a pattern that has been occurring over the last several years.

17.    Scott Werner's assertion that I do not have the authorization or support of the majority of the shareholders in Deluge LLC to bring the present action is also untrue.  As Werner's fraud has continued to be exposed, I have had numerous discussions with representatives of Portogon Investments, the two-thirds owner of Deluge LLC with myself.  In those conversations, Portogon has made it clear that it does support and authorize my efforts to stop Werner's unlawful and destructive conduct, and has confirmed that it believes that Werner has improperly taken money from Deluge LLC.  Thus, notwithstanding the clear provisions in

BO1 15650675.1

the Operating Agreement that authorize me to bring the present action on behalf of Deluge LLC, I also have the support of 100% of the record owners and members of Deluge LLC to obtain compliance with the Court's prior order and wrest unfettered control of the company from Werner.

18.     In an effort to resolve the present litigation, representatives of Portogon have been acting as intermediaries between the parties and have had numerous discussions with all parties. As part of these discussions, Portogon has made clear that its position is that Werner must agree to comply with all provisions of the Court's order, relinquish financial control of the Brentwood Spring and relinquish all access to the cash of the business.  In a recent conversation with Portogon, Werner not only refused to relinquish his control over the operations of the Spring, but he also threatened to "shut down" and damage the business, rather than comply with these terms. This conversation has raised serious concerns that absent some intervention from the Court, the business could be permanently damaged.

19.     Without a finding of contempt and the appointment of a receiver, I believe that the defendants will continue to unlawfully transfer assets from the Brentwood Spring and damage the business, potentially irreparably.

Executed this 8th day of July, 2004 at Boston, Massachusetts.


_____/s/ Scott A. Kanter_____
SCOTT A. KANTER