UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCOTT KANTER and DELUGE, LLC )<br>)<br>Plaintiff, )<br>)<br>V. )<br>)<br>SCOTT J. WERNER, WERNER )<br>ENTERPRISES and L&C SPRING )<br>WATERS OF NEW ENGLAND, LLC )<br>(f/k/a L&C SPRING WATERS OF NEW )<br>ENGLAND HOLDING COMPANY, LLC. )<br>)<br>Defendants. )<br>) | C.A. No. 04-10489-RCL |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO DISMISS OR IN THE ALTERNATIVE
TO STAY THESE PROCEEDINS PENDING MEDIATION OR ARBITRATION
(ORAL ARGUMENT REQUESTED)**

Defendants Scott J. Werner, Werner Enterprises and L&C Spring Waters of New England, LLC (collectively "Defendants"), submit this Memorandum of Law in Support of their Motion To Dismiss Or In The Alternative To Stay These Proceedings Pending Mediation or Arbitration. For the reasons stated below, the Plaintiffs' Complaint should be either dismissed or stayed pending mediation or arbitration.

**PRELIMINARY STATEMENT**

The Complaint represents claims by a disgruntled member of a closely held Massachusetts limited liability company, Deluge, LLC. The Parties have a long and contentious history. At its heart, however, the Amended Complaint is essentially a derivative suit in disguise in an attempt to circumvent the requirements of the underlying Operating Agreement and avoid its alternative dispute resolution provision. While not

directly suing the other member of Deluge, Plaintiffs' claims all involve the management or operation of Deluge. More importantly, Plaintiffs cherry pick certain provisions of the Operating Agreement to enforce while completely ignoring its mandatory Alternative Dispute Resolution provisions. For the reasons set forth below, the Court should dismiss the Amended Complaint against the Defendants and at a minimum must stay these proceedings pending resolution of these claims in mediation or arbitration.

## BACKGROUND[1]

### A. The Parties

Defendant Scott J. Werner ("Werner") is a resident of Stratham, NH, and is managing the day-to-day operations of Plaintiff Deluge, LLC, ("Deluge") a Massachusetts Limited Liability Company. See Amended Complt. ¶¶ 3, 4, 10. Defendant Werner Enterprises is an entity with a principal address in Stratham, NH. Id. ¶ 5. Defendant L&C Spring Waters of New England, LLC ("L&C") is a Delaware Limited Liability Company with a principal place of business in Stratham, NH. Id. ¶ 6. Plaintiff Scott A. Kanter ("Kanter"), a resident of West Newton, Massachusetts, is a 33.33% owner and member of Deluge. Id. ¶¶ 2, 10.

### B. Deluge, LLC

In April, 1997, Kanter entered into an Operating Agreement with Portogon Investments, SA, ("Portogon") to form Deluge, the primary business of which is to supply natural spring water to numerous third party vendors. Id. ¶¶ 10-13. Pursuant to the Operating Agreement Kanter owns 33.33% of Deluge and Portogon formally owns

---

[1] The allegations of the Amended Complaint are assumed to be true only for the purpose of this motion to dismiss.

66.66%. Id. ¶ 10.[2] Martin Richardson is the Director of Portogon. See Operating Agreement, attached as Exhibit A to the Amended Complaint. Portogon holds a 39.2% interest in L&C. See Assignment and Contribution Agreement, attached as Exhibit C to the Amended Complaint.

In June, 1997, Deluge, Inc., a Massachusetts corporation whose shareholders were Kanter and Portogon, merged into Deluge, LLC. Id. ¶ 11. Werner was a Director of Deluge, Inc. Id. ¶ 14. Werner has been managing the day-to-day operations of Deluge since 1997, with Kanter's approval. Id. Beginning in 2000, upset he was not receiving more distributions, Kanter began his complaints. Id. ¶ 25.

### C. The Deluge, LLC Operating Agreement

Kanter is suing under the Deluge Operating Agreement, which is attached as Exhibit A to the Amended Complaint. That Agreement includes a two-step mandatory alternative dispute resolution procedure provision. Specifically, Section 17.1, titled "Mediation," states in pertinent part that "any dispute in regard to the management or operation of the Company, such dispute shall first be attempted to be resolved by non-binding mediation conducted on the terms and conditions acceptable to all parties to such dispute using the American Arbitration Association ('AAA')." Id. Section 17.2, titled "Arbitration," states in pertinent part "[i]n the event that such dispute is not resolved by mediation, such dispute shall be submitted to a board of arbitrators."

On more than one occasion Werner has demanded mediation or arbitration pursuant to the terms of the Operating Agreement. Werner's counsel, Paul Monzione, explicitly demanded in his May 19, 2004 letter to Kanter's attorney that "this matter be

---

[2] In fact, as explained in Werner's Affidavit, which was submitted in support of Defendants' Opposition to Plaintiff's Motion For Civil Contempt [Court Document #15, Attachment #2], Werner actually owns a 33.33% interest in Deluge, which, on the advice of Kanter, he agreed to have held by Portogon.

3

mediated, and failing that, arbitrated as mandated in the operating agreement."[3] Despite these requests by Werner, Kanter has refused, insisting that this litigation go forward.

### D. Plaintiffs' Claims

Plaintiffs' claims, in essence, are all derivative in nature. All of the claims involve the management or operations Deluge. Count I alleges that the Defendants breached the Operating Agreement and seeks an "accounting" and to recover damages for this breach and seeks declaratory judgments regarding the rights and responsibilities of the Parties pursuant to the Operating Agreement. See Amended Complt. ¶¶ 32-40. Specifically, Plaintiffs seek a declaration that the transfer of a membership interest in Deluge, LLC to L&C is without force and effect, that Kanter is entitled to purchase the transferred interest on the same terms as the transaction with L&C, that Defendants have no right to continue managing and operating the business of Deluge and the Brentwood Spring, and that Defendants must provide an accounting to Kanter. See Amended Complt. Request for Relief, ¶ (a). Counts II-VI are all based on the same set of facts regarding the management and operation of Deluge and request damages allegedly arising out of the mismanagement and operation of Deluge. See Id. ¶¶ (b) – (f). The Complaint further requests relief pursuant to Section 12 of the Operation Agreement. Id. ¶¶ 32-35.

---

[3] A copy of Mr. Monzione's letter is attached hereto as Exhibit A.

## ARGUMENT

I. **The Court Must Dismiss or Stay The Lawsuit Pending Mediation and Arbitration.**

Section 3 of the Federal Arbitration Act ("FAA") provides for the mandatory stay of an action brought in federal court where that action involves an issue intended by the parties to be resolved through arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which the suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. There is a strong federal policy favoring arbitration. See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). "In order to stay court proceedings pursuant to § 3, this Court must find that 1) there exists a written agreement to arbitrate, 2) the dispute in question falls with the scope of that agreement, and 3) the party seeking arbitration has not waived its right to arbitration." Bowlby v. Carter Manuf. Corp., 138 F. Supp. 2d 182, 186-87 (D. Mass. 2001) (Gorton, J.) citing Brennan v. King, 139 F.3d 258, 263-67 (1st Cir. 1998). Here, the Operating Agreement clearly reflects Kanter's agreement first to attempt to resolve the any disputes regarding the management or operation of Deluge through mediation, and then through binding arbitration.

A. **Defendants Have Sought To Resolve The Dispute Through Alternative Dispute Resolution.**

The arbitration provision of the Operating Agreement states that "any dispute in regard to the management or operation of the Company, such dispute shall first be

attempted to be resolved by non-binding mediation." Operating Agreement, § 17.1. To the extent this constitutes a condition precedent to the enforcement of the mandatory arbitration provision, see HJM Portland, LLC v. DeVito Builders, Inc., 317 F. 3d 41, 44 (1st Cir. 2003), Defendants have satisfied this condition. Pursuant to Section 17.1 of the Operating Agreement, the Defendants have requested that Kanter mediate his claims. See Letter of Monzione, attached hereto as Exhibit A. Although the parties have engaged in some direct negotiations through counsel, Kanter has refused to participate in formal mediation. Since Defendants have satisfied the requisite condition precedent, it is appropriate that they now seek enforcement of the Operating Agreement's alternative dispute resolution provision.

### B. Kanter Contracted to Pursue Alternative Dispute Resolution Prior to Litigation.

The presumption of arbitrability "presumes proof of a preexisting agreement to arbitrate disputes." McCarthy v. Azure, 22 F.3d 351, 355 (1st Cir. 1994). "Thus, a party seeking to substitute an arbitral forum for a judicial forum must show, at a bare minimum, that the protagonists have agreed to arbitrate *some* claims." Id. at 354-55 (emphasis in original). Whether an agreement to arbitrate exists is a matter of state contract law. Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1, 19 (1st Cir. 1999). "[A]ny doubts regarding arbitrability should be resolved in favor of coverage 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Mugnano-Bornstein v. Crowell, 42 Mass. App. Ct. 347, 351 (1997), quoting Peerless Pressed Metal Corp. v. Int'l Union of Elec. Radio and Mach. Workers, AFL-CIO, 451 F.2d 19, 20 (1st Cir. 1971).

6

The Deluge Operation Agreement clearly states that any disputes regarding the management or operation of Deluge would first be attempted to be resolved through non-binding mediation and, if that failed, then by binding arbitration. See Operation Agreement § 17. There is no doubt that there is an agreement to arbitrate between the parties.

Moreover, while Kanter may argue that the named Defendants are not formally parties to the Operation Agreement and therefore there is no preexisting agreement to arbitrate, that argument is a non-starter. First, for the reasons set forth in the next section of this brief, all of the claims raised by the Plaintiffs fall squarely within the scope of the arbitration clause. Second, the principle of equitable estoppel should prevent Kanter from arguing that the provisions of the Operating Agreement do not apply to the Defendants.

The doctrine of equitable estoppel precludes a party from enjoying rights and benefits under a contract while at the same time avoiding its burdens and obligations. See, e.g., Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp., 659 F.2d 836, 838-39 (7th Cir. 1981); see generally Med. Air Tech. Corp. v. Marwan Inv., Inc., 303 F.3d 11, 18 (1st Cir. 2002) (dictum; collecting cases). "In certain instances, a defendant who is a non-signatory to an arbitration agreement can nevertheless compel arbitration against a signatory plaintiff." Bloxom v. Landmark Publishing Corp., 184 F. Supp.2d 578, 582 (E.D. Tex. 2002) (dismissing with prejudice case against non-signatory defendants because of valid arbitration agreement), citing Grigson v. Creative Artists Agency, LLC, 210 F.3d 524, 526 (5th Cir. 2000). Specifically, "equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must

7

rely on the terms of the written agreement in asserting its claims against the non-signatory." Grigson, 210 F.3d at 527. Here, Plaintiffs are seeking to enforce certain provisions of the Operating Agreement against the Defendants. As such, Plaintiffs should be estopped from asserting that the arbitration provision in that same agreement does not apply.

### C.     Plaintiffs' Claims Fall Squarely Within The Scope of the Operating Agreement's Alternative Dispute Resolution Clause.

Kanter's claims against Werner, Werner Enterprises and L&C fall within the scope of the unambiguous terms of the Operating Agreement. Determining whether a particular dispute falls within the scope of an existing arbitration clause is a matter of both state contract law and federal arbitration law. Rosenberg, 170 F.3d at 19. Nevertheless, the Supreme Court has announced its "healthy regard for the federal policy favoring arbitration" and has explained that the Federal Arbitration Act, 9 U.S.C.A. §§ 1-16 (West 1970 & Supp. 2004), "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hosp. v. Mercury Constr. Co., 460 U.S. 1, 24-25 (1983). Thus, a Court can not deny a party's request to arbitrate an issue "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Warrior & Gulf Navigation Co., 363 U.S. at 582-83. To that end, "in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, due regard must be given to the federal policy

favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.." Volt Information Sciences, Inc. v. Leland Stanford Junior Univ., 489 U.S. 468, 475-76 (1989) (citation omitted). As the First Circuit has held "[w]hen presented with a question of contract interpretation, our 'task is to ascertain the intentions of the parties, consistent with state law principles and with due regard for the federal policy favoring arbitration.'" HIM Portland, LLC v. Devito Builders, Inc., 317 F.3d 41, 43 (1st Cir. 2003), citing DiMercurio v. Sphere Drake Ins. PLC, 202 F.3d 71, 74 (1st Cir. 2000).

Here, the claims advanced by Kanter clearly trigger the Alternative Dispute Resolution clause of the Operating Agreement. As the formal parties to that agreement, Kanter and Portogon inserted a clause that broadly included "any dispute in regard to the management or operation of the Company." See Operating Agreement § 17.1. All of Plaintiffs' claims involve the operations or management of Deluge. In fact, Plaintiffs specifically request the Court to declare "that Defendants have no legal right to continue managing and operating the business of Deluge, LLC and the Brentwood Spring." Complt., Request for Relief, ¶ (a) (emphasis added). Plaintiffs would be hard-pressed to argue now that this lawsuit falls outside the scope of the Operating Agreement. Since all of the Plaintiffs' claims fall within the scope of the Alternative Dispute Resolution section of the Operating Agreement they are properly referable to mediation and, if necessary, arbitration, and pursuant to Section 3 of the FAA the Court "shall stay the trial of the action until arbitration is complete." 9 U.S.C. § 3.

While the FAA mandates that once a complaint is deemed arbitrable a Court must stay the litigation, see 9 U.S.C. § 3, Courts have held that this rule does not limit the

dismissal of a case in proper circumstances. See Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992) (affirming motion to dismiss with prejudice where all claims referable to arbitration); Sea-Land Serv., Inc. v. Sea-Land of Puerto Rico, Inc. 636 F. Supp. 750, 757-58 (D. Puerto Rico 1986) (dismissing suit where all claims subject to arbitration provision). Courts find dismissal to be proper when all claims are subject to the arbitration provision because there will be "no live controversies before this Court, [and] the appropriate procedure is dismissal of the action, without prejudice." Sea-Land, 636 F. Supp. at 757, citing Moses H. Cone Mem'l Hosp., 460 U.S. at 13. Since here all claims are subject to the arbitration provision, the Court should dismiss this action instead of merely staying it pending arbitration.

Even if the Court were to find that not all of the claims Plaintiffs assert against the Defendants are arbitrable, it should exercise its discretion to stay the case "as an exercise of its inherent power to control its own docket." See Cannavo v. Enterprise Messaging Svs., Inc., 982 F. Supp. 54, 59-60 (D. Mass. 1997). In Cannavo, the Court found that lawsuit contained both arbitrable and non-arbitrable issues under the parties' arbitration agreement. Id. at 59. In deciding to stay the litigation pending arbitration the Court held that where the lawsuit has been brought upon at least one issue referable to arbitration, "[u]nder the plain language of the FAA, therefore, it appears that the court *must* stay the pending litigation." Id. The Court went on to state that "even if I were not required by the FAA to stay the litigation, I have determined that it is appropriate to do so." Id. (emphasis in original). See also In re Atlantic Pipe Corp., 304 F.3d 135, 147-48 (1st Cir. 2002) (holding as a matter of its inherent power the Court can order parties to non-

consensual, mandatory alternative dispute resolution). Here, the Court has ample basis to, at a minimum, stay the litigation pending mediation or arbitration.

Accordingly, because the issues of the lawsuit are governed by the Operating Agreement's arbitration provision, this Court should dismiss or stay these proceedings pending arbitration.

## CONCLUSION

For the reasons set forth herein, Scott J. Werner, Werner Enterprises and L&C Spring Waters of New England, LLC respectfully request that the Complaint be dismissed or in the alternative stayed pending mediation or arbitration.

Respectfully Submitted,

SCOTT J. WERNER, WERNER ENTERPRISES and L&C WATERS OF NEW ENGLAND, LLC

By their attorneys,

Scott A. Birnbaum (BBO # 543834)
BIRNBAUM & ASSOCIATES, P.C.
268 Summer Street
Boston, MA 02210-1108
(617) 542-3100

DATED: July 14, 2004

### Certificate of Service

On July 14, 2004, I caused to be served a copy of the foregoing document by first class mail, postage prepaid, upon all counsel of record.

Scott A. Birnbaum