# EXHIBIT A



UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
************************************
                                  *
Scott A. Kanter and Deluge, LLC   *
                                  *
        Plaintiffs                *
                                  *
v.                                *        Civil Action No. 04-10489 (RCL)
                                  *
Scott J. Werner, Werner Enterprises, and  *
L&C Spring Waters of New England, LLC  *
(f/k/a L&C Spring Waters of New    *
England Holding Company, LLC.      *
                                  *
                                  *
        Defendants                *
                                  *
************************************
```

## MEMORANDUM IN SUPPORT OF DEFENDANT'S OPPOSITION TO EMERGENCY MOTION FOR CIVIL CONTEMPT

NOW COMES, Defendant, Scott J. Werner, and opposes Plaintiffs' Emergency Motion for Civil Contempt and Attorney's Fees and Costs on the grounds that Defendant has at all times acted diligently in providing documents and information pursuant to this court's order, and has provided responses in full compliance. Defendant has requested Plaintiffs articulate specifically what more Plaintiffs contend is due and owing, although Plaintiffs have failed to so state. Therefore, Defendant has not acted in intentional violation of the court order, has fully complied, and Plaintiffs' Motion is therefore moot.

# I. FACTUAL BACKGROUND

On or about April 15, 1997, Deluge, LLC, a Massachusetts Limited Liability Company was formed. At the time of its formation, it was agreed all interests held in Deluge would be shared equally among three interest holders, namely, Portegon Investments, SA, Scott A. Kanter, an individual, and Scott Werner, an individual. However, on the advice of Scott A. Kanter, it was agreed that Scott Werner's 1/3 interest would be held by Portegon Investments, SA and turned over to Scott Werner at a later date. Providing Mr. Werner with his interest would not be subject to any rights of first refusal or any of the other provisions in the Deluge operating agreement regarding transfer or sale of interest in that as the sharcholders all understood, the occurrence did not constitute a transfer and/or sale. (See Affidavit of Scott Werner, Paragraph 1)

Moreover, since the inception of Deluge, Scott Kanter, who is a CPA, has acted as Deluge's accountant and/or overseen the books and records of Deluge and/or Deluge's outside accountants.

As such, Mr. Kanter has had access to the financial records and books of Deluge since the inception of the company up to the present. Even after Mr. Kanter stopped acting as the CPA for Deluge, he remained involved by approving the tax returns for the company before filings, and by overseeing any ledgers or book adjustments as well as the financial records prepared for Deluge by either Tankle & Rosenburg, or Bigelow & Company, accounting firms. (See Affidavit of Scott Werner, Paragraph 2)

Mr. Kanter, who lent approximately $140,000 for the start up of Deluge, has waited until after he has been repaid this money with interest before initiating this action. Mr. Kanter has

visited the offices for Deluge for the specific purpose of reviewing the financial records on several occasions, including visits to the office in Portsmouth, New Hampshire, when Deluge was located there, and visits to the current Alton, New Hampshire, office. He has not only assisted in the keeping of the books and records and preparation of tax returns, but assisted in the transfer of the accounting system over to the current PeachTree accounting program. (See Affidavit of Scott Werner, Paragraph 2)

Mr. Kanter has never been refused access to the books and records of the company, and has in fact availed himself of several opportunities throughout the years to review the books and records first-hand. There have been occasions when instead of coming to the office to review records, Mr. Kanter has insisted on books and records being provided to him. On these occasions, Mr. Kanter has self imposed deadlines which have not always been met, and therefore financial information has not always been provided to Mr. Kanter in accordance with these imposed deadlines, or as quickly as Mr. Kanter requested. (See Affidavit of Scott Werner, Paragraph 4)

Mr. Kanter not only lacks standing for bringing the instant action, but has failed to obtain the required consent of the other members of Deluge as required under the operating agreement in order to institute the instant action. These matters will be more fully argued and developed in Defendant's Motion to Dismiss. Nonetheless, Mr. Werner has voluntarily entered into a stipulated court order requiring the production of certain records and things to Mr. Kanter, and has done so out of a spirit of cooperation and with a continuous effort to resolve Mr. Kanter's issues without the need for further litigation.

Although Mr. Werner has fully complied in a timely manner with the current court order, Mr. Kanter insists on going forward with his Motion for Civil Contempt. In this regard, counsel for Mr. Werner has written to counsel for Mr. Kanter on two separate occasions requesting that counsel for Mr. Kanter articulate specifically what Mr. Kanter contends has not been produced as required by the stipulated court order. As of the date of this Opposition, Mr. Kanter, through his attorneys, has refused to provide any further information in this regard, and has chosen instead to take up this Court's time on a Motion that is moot, and to seek attorney's fees and costs. Mr. Kanter's approach to these matters is not conducive to an amicable resolution of these business disputes. (See Exhibit "A" to this Opposition - Letter of Mr. Monzione to Mr. Robertson of May 12, 2004; and Exhibit "B" to this Opposition - Letter of Mr. Monzione to Mr. Robertson of May 19, 2004.

## II.  DEFENDANT HAS FULLY COMPLIED WITH THIS COURT'S ORDER

Although as set forth above, the instant action is subject to dismissal, Mr. Werner, in an effort to cooperate and to avoid the time and expense of protracted litigation, and as means of appeasing Mr. Kanter, instructed his attorneys to stipulate to a court order for the production of certain records and things. That order was apparently not entered by this Court until April 9, 2004 (See Plaintiffs' Memorandum of Law in Support of Motion for Civil Contempt), and therefore, could not have taken effect until on or after April 9, 2004.

As is set forth in Plaintiffs' Motion, Defendant endeavored to compile several boxes of financial records which were provided to Plaintiffs' counsel after "numerous discussions of the

mechanics of producing the information." (See Plaintiffs' Memorandum of Law in Support of Motion for Civil Contempt.)  Initially, Defendant expected the documents would be photocopied at Plaintiffs' expense.  However, after Plaintiffs refused to wait for copies, the originals of most of these documents were picked up by courier in Alton, New Hampshire, and transported down to Boston, Massachusetts.

The gist of Plaintiffs' arguments set forth in the Motion seems to be that somehow the material is "packaged."  However, beyond these mere assertions and descriptive terms, Plaintiffs have failed to be more specific or to provide any evidence to support such charges.  In light of the Affidavit of Mr. Werner in support of this opposition, it is clear that all of the data, records, and materials have been turned over.  Mr. Werner is unable to deal with this concept of "packaged," which amounts to merely unsubstantiated assertions and characterizations of the materials without further description or specific instruction, and cannot, therefore, be addressed.

Plaintiffs' Motion also mischaracterises communications between Plaintiffs' counsel and Defendant's counsel.  Specifically, Plaintiffs argue in their Motion that counsel for Defendant informed Plaintiffs' counsel that no contracts existed.  Attached hereto as Exhibit "C" is a true and correct copy of the letter referred to by Plaintiffs' counsel.  In paragraph three of that letter, it is clear that counsel for Defendant expressed his belief that there was no written contracts for the sale of water, specifically for Deluge.

On April 28, 2004, all of the contracts were provided after much effort to locate and send them, and indeed those contracts were either expired or were between L&C Spring Water Suppliers and the customer, not Deluge.

With those contracts was also provided the identity of all customers, and the letter was accompanied by a data disk. This data disk had been requested by Plaintiff's counsel, although it was not required to be produced under the court order. While it may be true that the financial information for the first quarter of 2004 was not produced in strict compliance with the court deadline, ledger adjustments made by the outside accounting firm of Bigelow & Company to the first quarter information for 2004 prevented the information from being immediately available. The bottom line is, as of now, all information required to be produced has in fact been produced, and Plaintiffs' motion is therefore moot.

Plaintiffs' Motion next argues that a separate bank account should have been established, but that Defendant failed to establish it. However, nothing in the stipulated court order requires a separate bank account, only a separate accounting. The financial books and records provided to Plaintiffs thus far clearly enable Plaintiffs to determine that a separate accounting is in fact being kept and maintained for the Deluge account. Because the court order does not require a separate bank account, Defendant cannot be in contempt for failing to establish one. Defendant's reason for not agreeing to establish a separate bank account at this time is that a separate bank account will make the day-to-day operations of the business more difficult, and depending on the outcome of this litigation, the individuals who should be in charge of the account have yet to be determined. Therefore, Defendant cannot be found in contempt for failing to do something that the court order did not require.

## III. CONCLUSION

Defendant has acted diligently in providing all materials pursuant to the court order. The

Motion was not required to achieve a production, since as of the date of the Motion, all materials

had been produced. For these and for all of the foregoing reasons, Defendant respectfully request

that Plaintiffs' Motion in its entirety be denied.

Respectfully submitted,

SCOTT J. WERNER, WERNER
ENTERPRISES and L&W WATERS OF
NEW ENGLAND, LLC

By Their Attorneys

Date: _____              By: _____
                                          Scott A. Birnbaum (BBO #543834)
                                          BIRNBAUM & ASSOCIATES, P.C.
                                          268 Summer Street
                                          Boston, MA 02210-1108
                                          (617) 542 3100

## CERTIFICATE OF SERVICE

I hereby certify that on this the ____ day of May, 2004, a true and correct copy of the
within Memorandum was sent via first class mail to Christopher Robertson, Esq.

_____
Scott A. Birnbaum, Esq.

LAW OFFICES OF

# PAUL M. MONZIONE



TWO SOUTH MAIN STREET • SECOND FLOOR
P.O. BOX 1478
WOLFEBORO, NEW HAMPSHIRE 03894
(603) 569-9599
TELEFAX: (603) 569-0599

**VIA FAX AND U.S. MAIL**

May 12, 2004

Christopher F. Robertson, Esq.
Seyfarth Shaw, LLP
Two Seaport Lane, Suite 300
Boston, MA 02210-2028

Re: Kanter v. Werner

Dear Chris:

I will avoid the temptation to respond to the opening paragraphs of your letter, other than to say that I, too, disagree with you.

I do want to understand, however, your position with respect to my clients' compliance with the court order. Specifically, you state that the data disk "still fails to contain the information that Court ordered the defendants to provide. . . ." Please tell me precisely what information you believe is omitted.

You state that the "data disk also appears to have been 'scrubbed' and was not produced in the form in which it would have been kept in the ordinary course of business. This was not, however, a document production pursuant to Fed. R. Civ. P. 34; rather, we were attempting to provide you with documents "sufficient to ascertain the total water output of the Brentwood Spring from 2001 to the present, all revenues derived from water delivered from the spring, all expenses charged, and all transfers of money of any kind." Please inform me whether you believe that the data disk is not sufficient to permit your client to ascertain this information, and what additional information you may require.

With respect to the issue of a separate bank account, as you well know, the Court's order does not require that a separate account be established. You have failed to explain why an accounting is not sufficient, particularly as your client must approve all expenses before moneys can be paid, under the Court order.

**BOSTON OFFICE**
268 SUMMER STREET
BOSTON, MA 02210
(617) 292-4900
TELEFAX: (603) 569-0599

**SAN FRANCISCO OFFICE**
1255 POST STREET, SUITE 1025
SAN FRANCISCO, CA 94109
(415) 346-9600
TELEFAX: (415) 929-4136

**PORTSMOUTH OFFICE**
74 BOW STREET, SUITE 206
PORTSMOUTH, NH 03801
(603) 334-9800

While you may disagree, I believe that before we impose ourselves on the Court's time, we attempt to resolve any outstanding issues you believe exist with respect to the Court's order.

I look forward to hearing from you.

Very truly yours,

Paul M. Monzione

PMM:sml
cc:  Scott Werner via fax only

LAW OFFICES OF
# PAUL M. MONZIONE



TWO SOUTH MAIN STREET • SECOND FLOOR
P.O. BOX 1478
WOLFEBORO, NEW HAMPSHIRE 03894
(603) 569-9599
TELEFAX: (603) 569-0599

**Via Fax and Mail**


                                        May 19, 2004


Christopher F. Robinson, Esq.
Seyfarth Shaw, LLP
Two Seaport Lane, Suite 300
Boston, MA 02210-2028

        Re:    Scott A. Kanter v. Scott J. Werner, et al.

Dear Chris:

        Thank you for your letter of May 18, 2004, which I just received on my desk this morning. There is absolutely no reason for you to be insulting or hostile, and in fact such an approach on the part of counsel in this case will only work to the detriment of our respective clients. In my opinion, the paramount task you and I have as lawyers in this case is to solve our client's problems and resolve this dispute in a way that is fair and just. Accusing me of the kind of conduct described in your recent letters is not productive nor intelligent, particularly since you have absolutely no understanding of what I have been doing on this end of the case to try to facilitate your client's requests.

        I have been doing this long enough that I am beyond being insulted or taking your comments personally. There is a need however, to correct the record.

        In one of your letters, you took offense that somehow I accused you of intentionally misrepresenting the fact that we had an agreement to open a separate bank account. In fact, in my letter to you on that subject, I stated just the opposite. I was giving you the benefit of the doubt that you were not intentionally misrepresenting these facts. I mentioned that in that letter because it was difficult for me to comprehend how you could have ever interpreted our communications as forming an agreement to open a separate bank account when the discussions involved your having placed that provision in the stipulation without having mentioned it or negotiated for it, and my reasons for not being able to include it. I did say that I believed it was appropriate for the two entities to have separate accountings and that the issue of a separate bank account should be taken up at our meeting. I did this because I do not believe it is wise for us to go through the logistics of establishing a separate bank account when the future of Deluge, as it currently exists, is in question. It is for this reason, and this reason only, that I have taken the position a separate bank

**BOSTON OFFICE**
268 SUMMER STREET
BOSTON, MA 02210
(617) 292-4900
TELEFAX: (603) 569-0599

**SAN FRANCISCO OFFICE**
1255 POST STREET, SUITE 1025
SAN FRANCISCO, CA 94109
(415) 346-9600
TELEFAX: (415) 928-4136

**PORTSMOUTH OFFICE**
74 BOW STREET, SUITE 206
PORTSMOUTH, NH 03801
(603) 334-9800

account is premature. Depending on the outcome of this litigation, Mr. Werner or Mr. Kanter may no longer be involved with Deluge. There is nothing nefarious nor devious about this subject. The fact that bills are only being paid with Mr. Kanter's approval presently obviates the need for a separate account, which would make the day-to-day operations of Deluge more difficult.

If Mr. Kanter wants to be distrustful of Scott Werner and view all acts and suggestions on Mr. Werner's part as attempts at deception, I suggest that is Mr. Kanter's problem and that you and I as lawyers not let it adversely affect our roles in this case.

I am not hiding behind Bob Lloyd or Scott Werner. The simple fact is, I am not personally compiling any of the materials that are being produced pursuant to the court order. In fact, most of the materials produced in accordance with the stipulated order came directly from the spring in Alton without my seeing them. This is not because I am trying to hide behind anyone, but simply because we are trying to expedite the process of getting you these materials. I am not a witness in this case, nor will I be taking an oath now or at any time to certify the production of anything under the court order. I am sure Scott Werner and those working for him will readily testify as to all they did to respond to the court order. The judge hearing these facts, I am sure, will not have the same unfounded bias as Mr. Kanter.

Additionally, as you know, the Bigelow accounting firm has been handling the books for Deluge. Scott Werner has suggested, and I agree, that arrangements should be made between our offices to have Mr. Kanter and/or any of you meet with or talk to Mr. Bigelow directly regarding all of the financial information, including any adjustments to the ledgers.

With regard to the accusation you make that I stated there were no contracts and thereafter contracts "suddenly appeared," at no time did I ever state that there were no contracts. My letter to you stated that with regard to any current written contracts, I believed there was none. As it turned out, there was no direct written contract between Deluge and any customers. Again, this was an attempt on my part to simply pass on to you my understanding of the situation at the time.

At this point, I believe your client's motion for civil contempt is moot, and you have failed to specifically identify what further you are seeking Scott Werner to produce. Please be advised we will be asking the Court for attorney's fees in our having to oppose your motion. Please also be advised that on behalf of Scott Werner, demand is hereby made this matter be mediated, and failing that, arbitrated as mandated in the operating agreement.

It has always been my view that what is needed here more than anything else is a meeting between the parties as soon as possible, where everyone will have an opportunity to hear first-hand what has transpired in the running of Deluge. The filing of motions that focus on only half the story may be a good way to keep the litigation and attorney's fees and expenses going, but does nothing to help with the resolution of this case. That is the reason in a derivative case such as this, the law requires an interest holder go first to the company before instituting a lawsuit, and this will be one of the initial legal questions the court will have to decide before Mr. Kanter will be

allowed to proceed any further in this case.

I look forward to hearing from you, and request that you provide me with a date in the near future when we can all get together for a meeting to resolve this matter without the need for further litigation.

Very truly yours,

Paul M. Monzione

PMM:sml
cc: Scott Werner
    Martin Richardson

LAW OFFICES OF

# PAUL M. MONZIONE



TWO SOUTH MAIN STREET • SECOND FLOOR
P.O. BOX 1478
WOLFEBORO, NEW HAMPSHIRE 03894
(603) 569-9599
TELEFAX: (603) 569-0599

**Via Fax and Mail**

April 23, 2004

Christopher F. Robinson, Esq.
Seyfarth Shaw, LLP
Two Seaport Lane, Suite 300
Boston, MA 02210-2028

Re:    **Scott A. Kanter v. Scott J. Werner, et al.**

Dear Chris:

This will confirm the voice mail message I left for you today in response to your letter to me of April 21, 2004, which because it was faxed at 7:56 p.m., was not received by me until yesterday, April 22, 2004.

You will recall when we negotiated the stipulation for order, I specifically informed you there would be no agreement to open a separate bank account for Deluge. Instead, it was agreed there would be a separate accounting, and the stipulation so provides. Therefore, your inquiry as to a separate bank account with signature card is in error.

I was of the understanding an accounting for the first quarter of 2004 would be forthcoming to you. I will check on this along with information regarding the dedicated accounting and provide this to you as soon as possible. I will also ask for copies of any contracts or agreements with third parties, although I believe there is none.

As I told you on your voice mail today, the Court order as stipulated to prohibits payments to be made that are not first approved. I am not going to take valuable time confirming a negative for you upon your request. I will confirm that to my knowledge, I have not received, nor have any legal fees been paid on Scott Werner's behalf from Deluge.

Finally, as I also stated today in my voice mail for you, I will not be spending my time drafting responsive pleadings and attending meetings. If we are going to attempt to resolve this matter amicably through joint efforts and have a meeting once your client is ready, it is my understanding the litigation, other than the stipulated order, is to be held in abeyance. If this is not the case, then you should advise your client that this case will have to be resolved through the

**BOSTON OFFICE**
268 SUMMER STREET
BOSTON, MA 02210
(617) 292-4900
TELEFAX: (603) 569-0599

**SAN FRANCISCO OFFICE**
1255 POST STREET, SUITE 1025
SAN FRANCISCO, CA 94109
(415) 346-9600
TELEFAX: (415) 928-4136

**PORTSMOUTH OFFICE**
74 BOW STREET, SUITE 206
PORTSMOUTH, NH 03801
(603) 334-9800

court, and I will immediately prepare a responsive pleading which in the first instance will include a Motion to Dismiss on several grounds. I do not believe Mr. Kanter has standing nor that his claims have merit, but it is clear that the bigger issue is what can be done given the current situation which is unacceptable to Scott Werner and apparently to Scott Kanter. I am willing to work with your office and with my client to resolve this in a way that makes sense. However, I am not going to run up legal fees within the litigation, which is contrary to the cooperation necessary to resolve this case without litigation.

Please confirm for me at your earliest convenience that defendants have an open extension of time in which to file responsive pleadings. Otherwise I will bring this matter to the attention of the Court and explain my understanding that given the stipulation for court order, there was not to be a deadline for responsive pleadings.

I look forward to hearing from you.

Very truly yours,

Paul M. Monzione

PMM:sml
cc: Scott Warner
    Robert Lloyd, Esq.

# EXHIBIT B

# EXHIBIT ß

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

```
*************************************
                                    *
Scott A. Kanter and Deluge, LLC     *
                                    *
        Plaintiff                   *
                                    *
v.                                  *        Civil Action No. 04-10489 (RCL)
                                    *
Scott J. Werner, Werner Enterprises, and  *
L&C Spring Waters of New England, LLC  *
(f/k/a L&C Spring Waters of New     *
England Holding Company, LLC.       *
                                    *
                                    *
        Defendant                   *
                                    *
*************************************
```

## AFFIDAVIT OF SCOTT WERNER IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CIVIL CONTEMPT

I, Scott Werner, being duly deposed and sworn, state and affirm as follows:

1. In or about April 15, 1997, Deluge, a Massachusetts Limited Liability Company was formed. At the time of its formation, it was agreed the interests in Deluge would be held equally among Portegon Investments, S.A., Scott A. Kanter, an individual, and Scott Werner, an individual. On advice from Scott Kanter, I agreed my 33 1/3 percent interest would be held by Portegon Investments to be returned to me at a later date. The return of this interest would not be subject to any rights of first refusal or any other requirements governing the sale and/or transfer of an interest since my interest would not in fact be transferred, but rather simply returned. As such, I am, and since the inception of Deluge, LLC, have always been a member of

the LLC.

2. In addition to the above, I have managed Deluge from its inception in its day-to-day operations, and Scott Kanter has acted as the accountant for Deluge. After Mr. Kanter stopped doing the accounting for Deluge, he continued to review all tax returns and to authorize their filing through tax year 2000. He did this with his colleges and associates at the accounting firm of Tankle & Rosenburg, in that Mr. Kanter himself is a CPA. He continued to review adjustments by the current accounting office for Deluge, Bigelow and Company through the tax year 2002. Mr. Kanter made yearly visits to the Deluge office in New Hampshire to go over the books and assisted in the transferring of the accounting program to the current "PeachTree" program. At all times since the inception of Deluge, Mr. Kanter has always been welcome to visit the office to review the financial books and records, and as set forth above, has in fact made such visits, including visits to the Portsmouth, New Hampshire office and to the Alton, New Hampshire office. He has never been denied access to any of the financial records of Deluge, and in fact has kept frequent and regular contact with the accounting firms for Deluge overseeing their work and adjustments to the books. Mr. Kanter has been invited on numerous occasions to participate in certain management aspects of the business, but has refused to become involved in any of the day-to-day operations of Deluge.

3. Throughout the time that Plaintiff Scott Kanter provided accounting services for Deluge, LLC, Plaintiff was fully aware of all income and expenses for Deluge, including all expenses incurred by me in my capacity managing Deluge From its inception, and other than accounting services, Plaintiff has never provided any management services of any kind for the day-to-day operation of Deluge. In fact, as a principle and manager of L & C Spring Water Suppliers, Inc., a New Hampshire corporation, that is not a party to this action, I am the only

member of Deluge with any expertise or experience in the spring water business. All of the customers, sales, day-to-day operations, contacts, promotions, and running of Deluge has been conducted by me from the inception of Deluge up to the present.

4. All of the financial activities of Deluge, including expenses, have been known to Scott Kanter since the inception of this company. At no time prior to bringing this lawsuit did Mr. Kanter ever object to any of the financial transactions of Deluge, and he has had access to any such financial information from the inception of Deluge to the present. In some instances prior to the filing of this lawsuit, financial information requested by Mr. Kanter was not produced to him on the deadlines he imposed or as quickly as he requested.

5. In addition to being an interest holder, Mr. Kanter is the one who lent the start-up money of approximately $140,000 for Deluge, the terms of the loan being a 6 year loan with interest. It was only after Deluge had repaid Mr. Kanter in full plus all of the interest that Mr. Kanter determined to bring this lawsuit.

6. Although I do not believe Mr. Kanter has standing to bring this case, and the majority interest holders of Deluge have not consented to the bringing of this lawsuit, and in fact object to it, I nonetheless instructed my Attorney to enter into a stipulated court order whereby Mr. Kanter would receive certain financial information that was otherwise available to him. I entered into the stipulated court order not because I thought a court order was necessary, particularly since I have always made the financial records available to Mr. Kanter, but to simply satisfy Mr. Kanter that he was in fact being provided all of the financial information from Deluge to which he is entitled.

7. Accordingly, on April 9, 2004, a stipulated court order was entered by this Court. At the time of entering into this stipulation, I attempted in good faith to determine a reasonable date by which all of the financial information could be physically provided to Mr. Kanter. However, at

the time of the stipulation, I was and continued to be occupied with the day-to-day operation and management of Deluge and of L & C Spring Water Suppliers, Inc.

8. In accordance with the court order, approximately 12 boxes of financial documents were put together at the office of L & C Spring Water in Alton, New Hampshire, where the Deluge financial records are kept in accordance with an arrangement between L & C Spring Water and Deluge. These 12 boxes were condensed to 9 boxes for purposes of shipping them to Boston once we learned that Mr. Kanter was refusing to come to the office to photocopy the documents. Two of these boxes contained what are called "pink slips" which are from the Deluge Brentwood Spring, which are generated as each tanker-truck takes water from the Spring. An agreement with Plaintiff was reached that these "pink slips" would remain as backup material since the actual invoices for the month were being supplied, and therefore the same information was being turned over. Mr. Kanter sent someone to transport the seven boxes of financial documents, and on April 8, 2004, these documents were turned over to his agent. A true and correct copy of a receipt for these boxes is attached hereto as Exhibit A.

9. The accountant for Deluge is an outside firm called Bigelow & Company in Portsmouth, New Hampshire. On April 8, 2004, ledgers for all of the financials were sent to Mr. Kanter's attorneys.

10. On April 28, 2004, identifications of customers and copies of contracts were provided by mail to Mr. Kanter's attorneys

11. Although the court order did not require it, on May 7, 2004, my attorney forwarded to Mr. Kanter's attorney the data disc for all of the financial information required to be produced This data disc included the financial information for the first quarter of 2004, which was required to be produced under the court order, but which was delayed in getting to Mr. Kanter's attorneys.

12  As of the sending of the data disc, all of the information required by the court order to be provided, was in fact provided, and the Motion for Civil Contempt is completely moot. On May 12, 2004, and again on May 19, 2004, my attorney wrote to Christopher Robertson, one of the attorneys for Plaintiff, and asked for clarification as to what information Plaintiffs contend has not been supplied. To date, Plaintiff's attorneys have not responded to that letter with any specific response as to what information they contend has yet to be produced.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 24th day of May, 2004, in Kuwait.


_____ 5/24/04
Scott Werner

# L & C
## SPRING WATERS OF NEW ENGLAND, LLC
### "Natural Spring Water"

Source: Fountain Springs
Alton NH 03809
Tel: (603) 293-2225
Fax: (603) 293-4703

Brentwood Springs
Brentwood, NH 03833
Office: PO Box 1330
Alton, NH 03809



## Document Release Form

- **Box 1 – Invoices** *(Originals)*
  **Bank Statements 2002**
  **General Ledger Payables 2002**

- **Box 2 – Invoices** *(Originals)*

- **Box 3 – Invoices** *(Originals)*

- **Box 4 – Invoices** *(Originals)*

- **Box 5 – Invoices** *(Originals)*

- **Box 6 –2001 General Ledger Payables**
  **2003 General Ledger Payables**
  **Bank Statements 2003**
  **Bank Statements 2001**

- **Box 7 – Invoices** *(Originals)*

**April 8, 2004**

The above-mentioned documents were received by VESSELIN STOYANOV in good condition and in the precise order stated. _____
assumes all liability in regard to the above-mentioned documents, including the return of the above-mentioned documents in the exact and precise manner in which they were received.

_____
Signature

VESSELIN   STOYANOV
Print Name   BREAD  RUNNER

617/423 2263

# EXHIBIT C

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
•••••••••••••••••••••••••••••••••••
                                    •
SCOTT A. KANTER and DELUGE, LLC     •
                                    •
        Plaintiff                   •
                                    •
v                                   •      Civil Action No. 04-10489 (RCL)
                                    •
SCOTT J. WERNER, WERNER             •
ENTERPRISES and L&C SPRING          •
WATERS OF NEW ENGLAND, LLC          •
(f/k/a L&C SPRING WATERS OF NEW     •
ENGLAND HOLDING COMPANY, LLC        •
                                    •
                                    •
        Defendant                   •
                                    •
•••••••••••••••••••••••••••••••••••
```

## AFFIDAVIT OF MARTIN RICHARDSON

I, Martin Richardson, being duly deposed and sworn, state and affirm as follows.

1    That I am the duly appointed representative of Portogan Investments, Inc., a member of Deluge, LLC.

2    The above-captioned case was initiated by Scott Kanter without the prior consent of Portogan Investments. Inc.

3    Although I agree that the issues addressed in this lawsuit should be resolved, it is Portogan's position that the resolution of these issues be achieved first through mediation and failing that, through binding arbitration as provided for in the operating agreement of Deluge, LLC.

4    To this end, the parties have already engaged in settlement negotiations, having

exchanged written proposals addressing all issues to be resolved, and although some disagreement remains, it is Portogan's position further negotiations in mediation are needed.

5. Having communicated regarding these negotiations with both sides, Portogan remains optimistic that further settlement efforts will result in a resolution thereby saving the parties the expense and aggravation of protracted litigation. Moreover, it is clear that the operating agreement for Deluge, LLC first requiring mediation and then binding arbitration does so in order to provide a process of alternative dispute resolution that is more cost effective and faster than litigation, in the best interest of all interested parties.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct

Executed this 18th day of July, 2004 at Jersey, Channel Islands.

Martin Richardson

Before me



J J R JOHNSON
NOTARY PUBLIC
P.O. BOX 345 HAWKSFORD HOUSE
CALEDONIA PLACE
ST HELIER JERSEY JE4 8QP