UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SCOTT A. KANTER and DELUGE, LLC, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 04-10489 (RCL) |
| SCOTT J. WERNER, WERNER ENTERPRISES and L&C SPRING WATERS OF NEW ENGLAND, LLC (f/k/a L&C SPRING WATERS OF NEW ENGLAND HOLDING COMPANY, LLC.), | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## AFFIDAVIT OF SCOTT A. KANTER

I, SCOTT A. KANTER, declare as follows:

1. I am a Massachusetts certified public accountant with over twenty years of experience, and I am the manager and a Member of Deluge, LLC, a Massachusetts limited liability company. I make this affidavit on the basis of my own personal knowledge of the facts set forth herein and could testify competently thereto if called to do so.

2. On April 15, 1997, I entered into an Operating Agreement with Portogon Investments, SA, a Panamanian corporation with offices in Jersey, Channel Islands, to form Deluge, LLC, a Massachusetts limited liability company. The Operating Agreement, attached hereto as Exhibit A, provides that Deluge, LLC has two, and only two Members, myself and Portogon. The Operating Agreement also provides that I am the sole manager and that the registered offices of Deluge, LLC are located at 109 State Street, Boston, MA 02109. In determining the Members and the structure of Deluge, LLC, there were negotiations among sophisticated businesspeople, including myself and representatives of Portogon. The parties to

the agreement were well aware of the Operating Agreement's limited applicability to only the Members of the LLC, and there was never any intent by the parties to expand the reach of the Operating Agreement's provisions to those that were not Members as defined in the agreement. Although Werner had been involved in the business, there was a conscious decision to exclude him from the Operating Agreement, and it was clear that he would not have any of the rights or remedies available to Members, and, because of prior legal problems, he would have no control or ownership interest in Deluge, LLC.

3. While the Operating Agreement contains certain dispute resolution procedures, those procedures are specifically limited both substantively and procedurally to disputes between Members of Deluge, LLC. I never contemplated that a dispute with a third party, including Werner, would be subject to these provisions, and the clear language of the agreement evidences that no such disputes were contemplated by the agreement. Moreover, by their terms the dispute resolution procedures described in the Operating Agreement are only applicable, and can only be implemented by Members.

4. On June 10, 1997, a ground lease to 44.19 acres in Brentwood, New Hampshire, and rights to the Brentwood Spring, a natural spring water source, were transferred to Deluge, LLC. Between June 10, 1997 and the present, the primary business of Deluge has been, and continues to be the supply of natural spring water from the Brentwood Spring, to which Deluge has exclusive rights under the ground lease. The current ground lease runs through September 30, 2006, and is subject to four successive 10 year extensions. The Brentwood Spring is currently a profitable water source, supplying water to numerous third party vendors under long-term contracts, including, among others, Suiza/Royal Ahold, which owns Stop & Shop locally, among other businesses.

5. Although he is not a Member of Deluge, LLC under the Operating Agreement, Werner has been managing the day-to-day operations of Deluge, LLC, conditioned upon and with the obligation to report regularly to me regarding the operations of the business. At no time has Werner ever been a Member of Deluge, LLC under the Operating Agreement, nor is he or any of his companies presently a Member. Rather, Werner has been acting akin to an employee at will, subject to removal at any time. Werner and I have never executed any contract of any kind that contains any arbitration clause or other agreement to submit disputes between them to arbitration. Nor has Werner or the other defendants executed any such agreement with Deluge, LLC.

6. Beginning in early 2001, Werner began to delay providing financial information to me related to Deluge, LLC and the Brentwood Spring. Requests for balance sheets, income statements and detailed general ledgers for Deluge, LLC in May and June 2001 went unanswered, and Werner claimed that he had his own accountant prepare the information. During this period, Werner also transferred the tax accounting for Deluge, LLC to a firm in New Hampshire. Throughout this period, I continued to demand detailed financial information regarding the business, and Werner refused to provide this information.

7. Moreover, unknown to me at the time, Werner undertook efforts to take control of the profits emanating from the Brentwood Spring by seeking to unlawfully move the ownership and management of Deluge, LLC to himself and his own operating company, L&C Spring Waters of New England, LLC ("L&C"). I never signed any authorization for any transfer of a Membership interest to Werner, as required under the Deluge, LLC Operating Agreement. Thus, Werner never owned any Membership interest in Deluge, LLC and still does not have any such interest. Nonetheless, Werner subsequently secretly transferred all of the management and

operations of Deluge, LLC to his own company, L&C Springwaters of New England, LLC ("L&C"), including all of the day-to-day operations, documents, revenues and profits of the Brentwood Spring.

8. Between February 2002 through the filing of this lawsuit in March 2004, I was provided virtually no information regarding the day-to-day operations of Deluge, LLC, L&C or the Brentwood Spring, other than summary financial information included within Deluge, LLC's publicly-filed annual tax returns and a summary annual financial statement. Despite repeated requests for legal documents, detailed financial statements and ledgers, and source documents such as bank statements, cancelled checks and credit card statements, I was provided none of this information. Likewise, Werner refused to provide any documentation or support for various "expenses" charged by himself or L&C to Deluge, LLC, including undocumented inter-company "transfers," unsupported "management fees," unauthorized "loans" and similar unidentified payments made by Deluge to Werner, Werner Enterprises and/or L&C.

9. During late 2002 and into 2003, I became increasingly concerned about my inability to obtain detailed financial information regarding the operations of Deluge, LLC and the Brentwood Spring from Werner. Promises to provide the requested information continued to go unmet, and Werner provided the bare minimum information to allow me to prepare my own personal tax returns, and nothing more. In addition, charges in the form of undocumented and unauthorized loans, transfers, management fees and miscellaneous expenses continued to be assessed by Werner, Werner Enterprises and/or L&C during this period. During 2003, Werner provided even less information than he had during 2002, and the communications between myself and Werner grew less and less frequent, despite repeated attempts by me to schedule a meeting and review the detailed information of Deluge, LLC, L&C and Brentwood Spring. I

also sought to obtain information directly from Werner's New Hampshire accountant, but was again provided only summary information without supporting detail.

10. Between December 31, 2003 and March 10, 2004, I demanded that Werner provide to me at Deluge's registered offices at 109 State Street, Boston, Massachusetts 02109, all documents related to the activities of L&C and Deluge, including but not limited to records of all bank accounts in either Deluge's or L&C's name, all account statements, credit card statements and receipts, signed contracts, purchase orders, paid and unpaid invoices, notes, drafts, checks, cancelled checks, payroll tax returns, Form 1099s, and any other documents or information in connection with the operations of Deluge. During this period, I was provided no information. Moreover, at no time during this period did Werner demand arbitration of this dispute under the Operating Agreement.

11. Concerned that the assets of his company were being stolen out from under me, I filed the present action on March 10, 2004 against Werner and his companies, seeking a declaratory judgment, permanent injunctive relief, the appointment of a receiver, and damages. I alleged that the defendants unlawfully had converted, and were continuing unlawfully to convert the assets and revenues of Deluge, LLC and the Brentwood Spring to their own personal use, in the form of unauthorized loans, advances, personal expenses, charges and transfers. I also alleged that the defendants had refused to produce any detailed information, including bank statements, cancelled checks, contracts and credit card statements concerning the current and historical management and business of the Brentwood Spring. Each of these claims was brought by me under state law and I made no direct claim against any of the defendants under the terms of the Operating Agreement for breach of contract. Nor could I make these claims, as none of the defendants were signatories of the agreement or Members of Deluge, LLC.

12. Simultaneous with the filing of the complaint, I also filed a motion for a preliminary injunction and for expedited discovery, seeking a court order requiring the production of the requested documents and sufficient controls over the business such that further assets would not be unlawfully converted and potential remedies lost. Just prior to a hearing on the plaintiffs' motion, the parties agreed to a stipulated preliminary injunctive order providing for the production of certain information, the establishment of a separate or dedicated accounting in the name of Deluge, LLC, and certain prohibitions and disclosure requirements on future transactions in connection with the Brentwood Spring. The defendants are also prohibited from altering, destroying or tampering in any way with any document related to Deluge, LLC, L&C Spring Waters of New England, LLC or the Brentwood Spring, including all documents reflecting the operations of, sale of water from, revenues received or payments made in connection with water originating from the spring. On April 9, 2004, this Court entered the stipulated order as an order of the Court.

13. Notwithstanding their agreement to the terms of the preliminary injunction, and the entry of the injunction as an order of the Court, the defendants have still delayed and refused to provide all of the information required by the preliminary injunction. Rather than provide the source data, including bank statements, checks and similar documents, the defendants repackaged that source information into alternative formats, in an apparent effort to mask numerous historical unauthorized transactions. The ledgers that have been produced are also incomplete and appear to be designed to hide certain transactions. This conduct is in violation of the Court's order. In addition, the defendants have failed to confirm that a separate accounting has been established for Deluge, LLC and the Brentwood Spring, and the limited documents that have been produced have demonstrated continuing violations of the Court's order and continuing

unlawful conduct. This led me to file a motion for contempt of the Court's order, which is currently pending. Only after this motion was filed and I continued to press for additional information, and identified the significant gaps in what had been produced, did Werner provide some additional information. For example, only in the last few days, after pressing for this information for several months, did Werner produce some bank account information. A letter to that effect is attached as Exhibit B. Significant gaps in information continue to remain, however.

14.     In addition, recent documents obtained by me demonstrate a clear violation of the Court's prior order that cannot be rebutted by the defendants. Specifically, the general ledger for L&C for the period June 1, 2004 through June 30, 2004, attached hereto as Exhibit B, shows that Werner was paid $3,547.58 in salary from the Brentwood Spring/Deluge, LLC for the month of June. The Court's injunction order made clear that Werner was to receive only $2,500 per month from the Brentwood Spring, and he was to escrow $5,000. In a sworn affidavit submitted to the Court on July 23, 2004, Werner stated that he had only paid himself $2,500 as required by the Court order, and also stated there were not additional funds to escrow. These statements appear to be untrue.

15.     Equally important to me, the documents that have been produced provide a complete vindication and support for the concerns that led to the filing of the present lawsuit. Although still woefully incomplete, even the limited documents produced demonstrate that the defendants have converted hundreds of thousands of dollars of Deluge, LLC's assets, derived from the Brentwood Spring, in the form of personal travel, loans, advances and similar transfers. For example, Werner appears to have charged travel to Hawaii, Europe, the Middle East and throughout the United States to Deluge, LLC and the assets of the Brentwood Spring. This travel in the last several years has amounted to thousands of dollars *per month*. Similarly, the

documents show tens of thousands of dollars in annual "management fees" in addition to Werner's "salary." None of these charges were approved by Deluge, LLC and all of these "expenses" are subject to recoupment by Deluge, LLC.

16.     In addition to the management fees and salary that has been unlawfully taken by the defendants, Werner has taken significant unauthorized loans from the company that remain unpaid. For example, the April 30, 2004 and June 30, 2004 balance sheets for L&C show intercompany transfers ($10,719) and loans due from Scott Werner ($35,186) related to the Brentwood Spring in excess of $45,000 and other loans from L&C to Werner ($75,046) and Werner Enterprises ($11,656) in excess of $86,000. The documents reflecting these unauthorized loans are attached as Exhibit C. These documents show that Werner continues to engage in unlawful and unauthorized conduct, notwithstanding the Court's injunction order and the pending motion for contempt. These documents also show that Werner's affidavit in opposition to the motion for contempt is simply not credible.

17.     Upon learning of the unlawful transfers of assets by Werner and his companies, Portogon's representative Martin Richardson told me that he agreed that Werner must pay back the amounts that he had taken and must relinquish control of the assets of Deluge, LLC. While Richardson has stated that he would prefer that this matter be resolved amicably, he also stated to me that he does support my efforts to recoup amounts that have been unlawfully taken. I have reviewed Mr. Richardson's affidavit submitted in connection with this motion, and nothing in that affidavit is inconsistent with his statement to me on June 16, 2004 and subsequently that Portogon "does support" my efforts to remove control of Deluge, LLC from Scott Werner and recoup amounts that have been unlawfully taken. Also, it is noteworthy that there is no statement by Portogon that Werner has ever been or is currently a Member of Deluge, LLC, nor

BO1 15657632.1

is there any contention that the express language of the Operating Agreement somehow contemplates arbitration with non-Member third parties such as defendants.

18.     The limited information produced concerning the contracts that govern the Brentwood Spring paints a similarly troubling picture of defendants' ongoing conduct.  These contracts demonstrate that the Brentwood Spring is the exclusive source for tens of millions of gallons of water, with associated revenues in the hundreds of thousands of dollars, but these revenues and profits do not appear to be flowing through the Deluge, LLC bank account, the exclusive lessee of the Spring.  The documents also show that the key contracts have been transferred into the name of L&C from Deluge, LLC, without the authorization of the Members.

19.     For example, attached to this affidavit as Exhibit D is an agreement executed November 30, 2001 between Suiza and L&C.  This agreement, signed by Werner as the purported "manager" of L&C Spring Waters of New England Holding Company LLC ("L&C Holding"), refers to L&C Holding as the Seller and states that all water will come from "Seller's Brentwood Springs location."  Only Deluge, LLC, however, has a "Brentwood Springs location," and no contract or agreement has ever been approved or authorized by myself or Portogon transferring the exclusive lease over the Brentwood Spring to L&C Holding, a company that was never disclosed to Kanter or, based on recent conversations with Martin Richardson, Portogon until 2004.  Thus, this contract with Suiza, which was also never shown to or approved by myself or Portogon, conclusively demonstrates Werner's unlawful attempt to convert the assets of Deluge, LLC to L&C.

20.     Moreover, the agreement with Suiza provides that up to 50,000,000 gallons annually shall come from Brentwood Spring for a term of seven years.  Based on the price for the water in the contract, this single relationship translates to up to a maximum of $750,000 of

revenue to the Brentwood Spring. Nonetheless, consistent with Werner's unlawful conversion, virtually all of the monies in the Deluge, LLC bank account were drained in 2002, and deposits, including those from the contract (a monthly $25,000 payment), were directed to a non-Deluge, LLC account. In addition, the balance sheets attached as Exhibit C show that, despite the Court's order requiring that all revenues coming from the Brentwood Spring be subject to a dedicated accounting, and all transfers of those assets must be disclosed to and approved by me, there is a negative cash balance in the Brentwood Spring account. Given that I have not been shown or approved any payments as required by the Court's order, save a handful, there is no explanation for this balance sheet other than a clear contempt of the Court's order and the continuing unlawful conversion of assets.

21. The limited information produced also raises an additional significant concern. Specifically, the documents reflect that water from the Brentwood Spring is being pumped from the Spring for the benefit of Werner-controlled companies other than Deluge, LLC, despite Deluge, LLC's exclusive lease over the Spring. In documents as recent as May 31, 2004, there is evidence that water is being taken from the Brentwood Spring for the benefit of L&C Springwaters of New England, LLC, with no remuneration paid to Deluge, LLC for that water. Examples of these documents are attached as Exhibit E. Worse still, it appears from other documents that the expenses associated with these water deliveries are being charged to Deluge, LLC. Thus, Deluge, LLC is being drained of its assets for the benefit of the defendants, not through moving the cash as in the past, but by taking the water directly from the spring. This conduct has never been authorized by myself or Portogon and amounts to unlawful conversion from Deluge, LLC.

22. In light of the continuing concerns over the defendants' violations of the Court's

injunction order and the apparent conversion of the assets of the Brentwood Spring to the benefit of unrelated third parties, on July 9, 2004 I moved for the appointment of a receiver to oversee the operations of Deluge, LLC and the Brentwood Spring.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 28th day of July, 2004 at Boston, Massachusetts.

                                                    _/s/ Scott Kanter_____
                                                    SCOTT A. KANTER