## SPRING WATER SUPPLY AGREEMENT

**THIS AGREEMENT**, effective as of the 30th day of November, 2001 (the "Effective Date") between Suiza Foods GTL, LLC ("Buyer") and L & C Spring Waters of New England Holding Company, LLC ("Seller".)

The parties hereby agree as follows:

1. Term. Unless earlier terminated in accordance with the provisions of this Agreement, this Agreement shall have a term of seven years commencing on January 1, 2001 and ending on December 31, 2007 (the "Term").

2. Purchase and Sale of Water. Buyer shall purchase from Seller and Seller shall sell to Buyer, up to 50,000,000 gallons annually of spring water. Buyer agrees to purchase all of its spring water needs for the following three plant locations: Garelick Farms, Franklin, MA, Miscoe Springs, Mendon, MA and Garelick Farms-Lynn, Lynn, MA, from the Seller for the Term of this Agreement.

3. Water Supply. All spring water sold hereunder shall be sourced from Seller's Brentwood Springs location and shall be delivered to Buyer FOB Seller's facility at Brentwood Springs. In the event Seller cannot source all spring water to be purchased by Buyer from its Brentwood Springs location, Seller shall have the right to source spring water from its Fountain Springs location in Alton, New Hampshire, provided that any additional freight charges incurred by Buyer as a result of the change in source shall be Seller's sole responsibility.

4. Delivery. Seller shall cause spring water to be purchased hereunder to be available for pick up by Buyer at any time during the term of this Agreement seven days a week, twenty-four hours a day. Buyer may cause the spring water purchased hereunder to be picked up by its employees or by a third party contractor. Seller shall cause its spring and all related equipment to be kept in good working order and repair. Seller shall ensure that Buyer or Buyer's agents shall have unrestricted access to the spring at all times, including during times of inclement weather.

5. Purchase Price. During the Term of this Agreement, the purchase price for the spring water shall be fixed at $.015 per gallon.

6. Payment Terms.

    a) Buyer will pay Seller a fixed monthly sum of $ 25,000 on or before the 10th day of each month. On a quarterly basis, on or before the 30th day following the expiration of each calendar quarter during the term of this Agreement, Buyer and Seller shall determine actual amounts owing to Seller based on Buyer's actual purchases during the quarter (reduced by any freight or transportation charges borne by Seller). Any amounts determined to be owing to Seller shall be paid on a "net 10 days" basis by the Buyer. Any

amounts determined to be owing to Buyer shall be deducted from the following months payment by the Buyer to the Seller.

b) All payments by the Buyer to the Seller shall be by wire transfer to an account of the Seller designated by the Seller to the Buyer. The Seller may re-designate the account for wire transfer from time to time upon reasonable notification to the Seller.

c) In the event Buyer's fixed sum payments to Seller hereunder exceed 20% of the amounts due based on actual usage for a period of three or more consecutive months, Buyer and Seller shall agree, in good faith, on a reduction to the fixed sum payments to approximate such actual usage.

7. Quality of Goods and Timely Delivery.

a) Seller acknowledges that the timely delivery of acceptable spring water is essential to the business operations of Buyer. Accordingly, if Seller delivers spring water which fails to meet the quality standards for spring water set by any federal, state or local agency, Seller shall immediately source all spring water needs of the Buyer from its Fountain Springs Source in Alton, NH, provided that any additional freight charges incurred by Buyer as a result of the change in source shall be Seller's sole responsibility. If the water from both the Brentwood Springs location and Fountain Springs location fail to meet the standards identified above, Buyer may in it's sole discretion, immediately terminate the Agreement.

b) If either Buyer or Seller fails in any material respect to perform its respective obligations or comply with its representations and warranties set forth herein (other than as set forth in paragraph 7a above), and such failure continues for 10 days after written notice, the other party may immediately terminate this Agreement.

8. Representations and Warranties. Seller warrants that the spring water sold to Buyer pursuant to this agreement (i) shall comply with then current rules, regulations and guidelines of the United States Food and Drug Administration, United States Environmental Protection Agency and of each applicable state and local regulatory agency as from time to time amended, (ii) shall be acceptable as to flavor, odor and appearance, (iii) shall not be adulterated, and (iv) shall be in good condition, of merchantable quality, and fit for sale to customers of Buyer in the ordinary course of business. It is understood and agreed between the Buyer and the Seller that the quality of the spring water of the Seller as it currently exists meets and satisfies all of the provisions of this Paragraph 8.

9. Seller shall take all actions necessary or appropriate, at Seller's sole cost and expense, to obtain and maintain in effect at all times, all permits, licenses and other authorizations required by any applicable law (collectively the "Permits") in order that the activities contemplated by this Agreement to be undertaken by Seller may be legally undertaken. To the extent that any permits are required by Buyer, Buyer shall, with Sellers cooperation obtain and pay for same.

10. <u>Indemnification</u>.

    10.1  Seller agrees to defend, indemnify and hold harmless Buyer, its subsidiaries and affiliates and its and their agents, officers, directors, employees, representatives, successors and permitted assigns from and against all obligations, liabilities, damages, penalties, fines, violations, claims, causes of action, suits, damages, judgments, costs and expenses (including, without limitation, reasonable attorneys' fees) (together, "Losses") that Buyer may suffer, arising out of, resulting from or connected with acts or omissions of Seller in the performance of this Agreement; and/or Sellers' breach of representations, warranties and agreements set forth in this Agreement, except to the extent any such losses result from any act or omission of Buyer.

    10.2  Buyer agrees to defend, indemnify and hold harmless Seller, its subsidiaries and affiliates and its and their agents, officers, directors, employees, representatives, successors and permitted assigns from and against all obligations, liabilities, damages, penalties, fines, violations, claims, causes of action, suits, damages, judgments, costs and expenses (including, without limitation, reasonable attorneys' fees) (together, "Losses") that Seller may suffer, arising out of, resulting from or connected with acts or omissions of Buyer in the performance of this Agreement; and/or Buyers' breach of representations, warranties and agreements set forth in this Agreement, except to the extent any such losses result from any act or omission of Seller.

    10.3  The indemnification obligations of Seller and the Buyer shall survive the termination or cancellation of this Agreement for any reason whatsoever.

11. <u>Insurance</u>. Each of Buyer and Seller shall, at its sole cost and expense, maintain throughout the term of this Agreement product liability insurance in an amount not less than One Million Dollars ($1,000,000). The insurance shall cover the spring water and shall provide for at least ten (10) days' written notice to the other party before cancellation or diminution in coverage shall take effect. Either party shall provide the other, upon request, with copies of the policies or certificates of insurance evidencing the coverage.

12. <u>Assignment</u>. Neither party may assign this Agreement without the prior written consent of the other, such consent not to be unreasonably withheld. Any assignment without such consent shall be void. However, Buyer may assign this Agreement to any affiliated company without Seller's prior consent. Buyer and Seller agree to cause any purchaser of all or substantially all of the assets or any successor to all or substantially all of the business of either Buyer or Seller, as applicable, to assume this Agreement, subject to the foregoing consent requirements.

13. **Notices.** Any notice demand or payment required to be given under this Agreement shall be deemed to have been fully given or made if sent by facsimile or by registered or certified mail, respectively addressed as follows:

    To Seller: L & C Spring Waters of
    New England Holding Company
    LLC
    Attention: _____

    To Buyer: Suiza GTL, LLC
    124 Grove Street
    Franklin, MA 02038
    Attn: William Vasquez
    Regional V.P. Operations

    All notices shall be effective upon receipt.

14. **Confidentiality.** Seller agrees to hold in strict confidence and not use or disclose any and all information regarding Buyer's business, methods, marketing, strategy, its customers, data, technical information, or any other information obtained during the term of this Agreement except upon the prior written consent of Buyer, which consent shall be within Buyer's sole discretion, and Seller shall not disclose, utilize or commercialize the same now or in the future. Upon termination of this Agreement, Seller shall destroy or return all of the confidential information received from Buyer during the term of this Agreement. Seller shall not disclose any of the terms of this Agreement to any of Buyer's customers.

15. **Governing Law.** The laws of the Commonwealth of Massachusetts without regard to the conflict of laws provisions thereof, shall govern the validity and interpretation of this Agreement and the performance by the parties of their respective duties and obligations hereunder.

16. **Entire Agreement.** This Agreement (together with the Certification and Continuing Guaranty attached hereto) represents the entire agreement between the parties hereto and supercedes and replaces any and all agreements between the parties or any of their affiliates or predecessors relating to the subject matter hereof.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first above written.

L & C SPRING WATERS OF NEW
ENGLAND HOLDING COMPANY, LLC
By: _____
Title: MANAGER
Date: November 30, 2001

SUIZA GTL, LLC
By: _____
Title: PRESIDENT
Date: November 30, 2001

Page 4