## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2006 JUL 26  P 2: 03

DISTRICT OF MASS.

SCOTT A. KANTER and DELUGE, LLC, )
)
Plaintiffs, )
)
CIVIL ACTION NO. 04-10489 (RCL)
v. )
)
SCOTT J. WERNER, WERNER )
ENTERPRISES and L&C SPRING )
WATERS OF NEW ENGLAND, LLC (f/k/a )
L&C SPRING WATERS OF NEW )
ENGLAND HOLDING COMPANY, LLC.), )
)
Defendants. )

### MEMORANDUM IN SUPPORT OF
### PLAINTIFF'S EMERGENCY EX PARTE MOTIONS  FOR TEMPORARY
### RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff Scott A. Kanter ("Kanter"), submits this Memorandum of Law in Support of his

Emergency *Ex Parte* Motions for Temporary Restraining Order and Preliminary Injunction.

Pursuant to Fed. R. Civ. P. 65(a), Kanter seeks to restrain Defendant, Scott J. Werner, ("Werner"

or "Defenant"), from harassing, harming or contacting by any means Kanter, his children, or any

other members of Kanter's family.  Kanter also seeks to restrict Werner from coming within 100

feet of Kanter or his family.

### STATEMENT OF FACTS

This case was originally filed in March 2004 against Defendant Scott Werner seeking

declaratory relief and damages related to a Massachusetts limited liability corporation, Deluge,

LLC.  On February 14, 2005, the Court ordered the parties to mediation and arbitration, but

retained jurisdiction to monitor that process.  During 2005, the parties chose a mediator, but the

mediation has not proceeded due to certain open requests for information between the parties and

scheduling issues, as set forth in periodic updates provided to the Court, the most recent of which was endorsed by the Court on June 22, 2006.

Notwithstanding the parties' agreement to mediate and ongoing settlement discussions, on July 10, 2006 at approximately 1:30 p.m., Werner, who lives and works in New Hampshire, approached Kanter on Canal Street in Boston and physically accosted Kanter and threatened Kanter and his family. *See* Affidavit of Scott Kanter, dated July 25, 2006, ¶ 2. Specifically, as Kanter was leaving a restaurant located across the street from Kanter's office building, Werner, who apparently was waiting for Kanter, yelled to Kanter from a white SUV parked along the side of the street. Werner then exited the vehicle and approached Kanter. *Id.* As Kanter was greeting Werner, Werner placed his hand and arm around Kanter's shoulder and forcefully pulled Kanter toward the vacant side of the restaurant building. *Id.* ¶ 3. As he did this, Werner said to Kanter in a threatening tone, "I have pictures of your kids that I want to show you." Kanter then shook himself away from Werner and told Werner not to touch him. *Id.* ¶ 4. Werner again grabbed Kanter by the shoulder and said "as you can see I know where you work and even where you eat lunch." Kanter again broke free of Werner's arm and attempted to leave. Werner, however, blocked Kanter's way, and said, "don't fucking walk away from me." *Id.* ¶ 5. Werner then pushed his finger into Kanter's nose and said, "I am all done fucking talking to you," and "I am done with you being a little Jew boy and done with your fucking Jew boy attorneys." *Id.* ¶ 6.

Fearing to walk away, Kanter attempted to calm Werner down by reminding Werner that this was a business dispute that they were trying to resolve professionally and that it should not be a personal or family matter. Werner interrupted Kanter and told him that "the 24 hour clock was running." Werner demanded that Kanter transfer to him "his share" of Deluge, which is the subject of this lawsuit. *Id.* ¶ 7. When Werner did not calm down, Kanter stood up and quickly

walked across the street into his office building. *Id.* ¶ 8. Immediately following the assault and threats, Kanter contacted the Boston Police Department, who have assigned an officer to the matter and are currently investigating the incident. *Id.* ¶ 9.

Subsequently, the undersigned counsel confirmed by letter dated July 19, 2006 to Defendant's counsel in this matter that a criminal complaint had been filed against Werner and that Werner should stay away from Kanter, his children, and any other family members. Counsel also advised that Kanter would be seeking a restraining order against Werner prohibiting him from approaching or threatening Kanter or his family. A true and accurate copy of the letter is attached hereto at Exhibit "A".

## ARGUMENT

Plaintiff is entitled to an *ex parte* temporary restraining order and preliminary injunction because immediate and irreparable injury may result to Kanter, his children, or to his family, if the Defendant is not restrained from contacting or approaching them. Fed. R. Civ. P. 65(a). Moreover, allowing notice to Defendant before issuance of a temporary restraining order creates an immediate harm of anxiety and stress to Kanter from his fear that Defendant may carry through on his threats. *See Connors v. Boudreau*, No. MICV-935495, 1993 WL 818643 (Mass. Super. 1993).

In this case, the Defendant unexpectedly approached Kanter near Kanter's place of employment, physically accosting him and threatening Kanter and his family. The Defendant told Kanter words to the effect that he had pictures of Kanter's children, knew where Kanter worked, and that he was all done talking to Kanter. Under these circumstances, Kanter and his family are now justifiably apprehensive and concerned that the Defendant may have the present and clear intention and ability to carry out his threats.

The temporary restraining order and preliminary injunction will result in minimal

3

intrusion upon the Defendant. The temporary restraining order and preliminary injunction are limited in time and scope. Further, restraining Defendant from contacting or harassing Kanter, and restricting his access to Kanter and his family, will not significantly intrude upon Defendant's privacy or freedom. The Defendant has no legitimate reason to directly contact Mr. Kanter, his children, or any family members. Moreover, other than hearings, conferences or other proceedings at which both Kanter and Werner are required to attend for the purposes of this lawsuit (at which there will be counsel and other participants), Defendant has no legitimate reason to come within 100 feet of Kanter, his children, or any other family members.

## CONCLUSION

Kanter stands to suffer irreparable injury if the requested temporary restraining order and preliminary injunction are denied. Conversely, the requested temporary restraining order and preliminary injunction will minimally intrude upon Defendant. He has no legitimate reason to contact Kanter, his children, or any other members of Kanter's family, or come within 100 feet of Kanter or his family. Kanter does not seek to punish Defendant, but rather, seeks to protect himself and his family by requesting that this Court direct Defendant to refrain from contacting or harassing Kanter or his family, and accessing Kanter or his family members

Respectfully Submitted,

SCOTT A. KANTER,
By his attorneys,

Christopher F. Robertson (BBO No. 642094)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800
Telecopier:    (617) 946-4801

Dated: July 26, 2006

4

BO1 15791143.1 / 87905-000001

# Exhibit A



World Trade Center East

Two Seaport Lane

Suite 300

Boston, MA 02210-2028

617-946-4800

fax 617-946-4801

www.seyfarth.com

Writer's direct phone
  617-946-4989

Writer's e-mail
  crobertson@seyfarth.com

BRUSSELS

WASHINGTON, D.C.

SAN FRANCISCO

SACRAMENTO

NEW YORK

LOS ANGELES

HOUSTON

CHICAGO

BOSTON

ATLANTA

July 19, 2006

**BY FACSIMILE:  603-569-0599**

Mr. Paul M. Monzione
Two South Main Street
P. O. Box 1478
Wolfeboro, NH 03894

      Re:    <u>Scott A. Kanter v. Scott J. Werner, et al.</u>, Civ. Act. No. 04-10489 (RCL)

Dear Paul:

      I am writing to confirm that a criminal complaint has been filed against your client Scott Werner with the Boston Police in connection with his assault and battery of Scott Kanter on July 10, 2006, and the threats to Mr. Kanter and his children. I am also writing to advise you that Mr. Kanter will be seeking a restraining order against Mr. Werner prohibiting him from approaching or threatening Mr. Kanter or his children or any other member of his family.

      As you know, on July 10, 2006 at approximately 1:30 p.m., Mr. Werner approached Mr. Kanter on Canal Street in Boston, physically accosted him and threatened Mr. Kanter and his family. Specifically, Mr. Werner told Mr. Kanter that "he had pictures of his kids" and knew where Mr. Kanter works and eats. Mr. Werner also used derogatory remarks about Mr. Kanter, referring to him as a "Jew boy." When Mr. Kanter attempted to walk away, Mr. Werner again threatened him and once again physically accosted him.

      Apparently, the purpose of Mr. Werner's threats was to intimidate Mr. Kanter into relinquishing control of Deluge. He claimed that if Mr. Kanter did not cave into his threats against him and his children, he would personally transfer the Suiza contract from Deluge and shut the company down. He also claimed that he had "millions of dollars" and would either personally come after Mr. Kanter or have others do it for him.

      Notwithstanding the broader issues in the case, the purpose of this letter is quite simple. Please tell your client to stay away from Mr. Kanter and to refrain from threatening him and particularly his children. In addition, please advise Mr. Werner that he is not to do anything to sabotage or otherwise impair the business of Deluge, as he has threatened to do in the past.



July 19, 2005
Page 2

After you have spoken to your client, please confirm that he will refrain from any further contact with Mr. Kanter or his family.  In addition, please confirm that Mr. Werner will not take any steps to harm the business of Deluge.  Once you have confirmed these matters, we can then discuss how to proceed in this matter.

I look forward to hearing from you.

Sincerely yours,

SEYFARTH SHAW LLP

Christopher F. Robertson

cc:    Scott A. Kanter
       Martin Richardson
       Michael F. Callahan, Esq.