UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCOTT A. KANTER and DELUGE, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> SCOTT J. WERNER, WERNER ENTERPRISES and L&C SPRING WATERS OF NEW ENGLAND, LLC (f/k/a L&C SPRING WATERS OF NEW ENGLAND HOLDING COMPANY, LLC.), <br><br> Defendants. | CIVIL ACTION NO. 04-10489(RCL) |

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF TAX RETURNS**

Plaintiffs Scott A. Kanter and Deluge, LLC (collectively "Plaintiffs") move for an order compelling defendant Scott J. Werner ("Werner") to produce tax returns filed by Werner, L&C Springwaters of New England, LLC ("L&C, LLC"), and L&C Spring Waters Suppliers, Inc. ("L&C, Inc.") from the year 2000 through the present.

**I.   PRELIMINARY STATEMENT**

Plaintiffs served a notice of deposition and subpoena upon Werner seeking oral testimony and the production of certain documents, including all tax returns filed by Werner, L&C, LLC and L&C, Inc. from the year 2000 through the present. *See* Notice of Deposition and Deposition Subpoena, attached hereto as Exhibit A.  Werner objected to the Notice and Subpoena, based upon an alleged "right of privacy" privilege to the production of the tax returns. *See* Werner's Objection, attached hereto as Exhibit B.  In simple terms, the reported incomes, assets, revenues, expenses, debts, liabilities and fiscal relationships by and between Werner, L&C, LLC and L&C, Inc. are at the very heart of the dispute between the parties to this litigation.  There is no valid

basis for the assertion of a "right to privacy" privilege in these circumstances. Plaintiffs are entitled to discovery of the tax returns of Werner, L&C, LLC, and L&C, Inc. which contain vital information -- including, but not limited to: reported income, salaries, business assets, business expenses, loan receivables, stockholder loans and management fees -- needed for the prosecution of their claims and responses to the defendants' claimed defenses. Because the Plaintiffs are willing to enter into a confidentiality agreement in connection with any such production, there is absolutely no prejudice to Werner in providing this vital information.

## II.   FACTS

Deluge, LLC ("Deluge") is the lessee of a ground lease to 44.19 acres of real property in Brentwood, New Hampshire, including rights to Brentwood Spring, a natural spring water source, and owner of certain renewable contracts to supply water to third party resellers and an affiliated company. *See* Affidavit of Scott A. Kanter dated May 6, 2004 ("Kanter Affidavit"), ¶ 3, Docket No. 12. Between June 10, 1997 and the present, the primary business of Deluge, LLC has been, and continues to be the supply of natural spring water from the Brentwood Spring. Kanter Affidavit, ¶ 4. The Brentwood Spring is currently a revenue-generating water source, supplying water to third party vendors under long-term contracts. Kanter Affidavit, ¶ 5.

From 1997 through 2004, Werner, who is not a member of Deluge, managed the company's day-to-day operations. Kanter Affidavit, ¶ 6. Werner's responsibilities included providing Deluge's accountants with the annual financial information for Deluge, including revenues, expenses, assets and liabilities. Kanter Affidavit, ¶ 7. Although he did not provide any detailed information underlying the summary results during this period, Werner provided sufficient information for the accountants to prepare the company's tax returns from 1997 through 2000. Kanter Affidavit, ¶ 7. In 1997, 1998 and 1999, Deluge reported a profit. Kanter

Affidavit, ¶ 7.

Beginning in May 2001, when Deluge's 2000 tax returns were being processed by a separate accounting firm in New Hampshire retained by Werner, Werner began to delay providing any financial information related to Deluge and the Brentwood Spring to its members. Kanter Affidavit, ¶ 8. From May 2001 until the initiation of the present lawsuit, Werner provided virtually no detailed information or source documents regarding the day-to-day operations of Deluge, L&C, LLC or the Brentwood Spring. Kanter Affidavit, ¶ 13. Moreover, during this period, there were no distributions made to Deluge's members and the company reported no profit. Kanter Affidavit, ¶ 17. To the contrary, the expenses and fees charged to Deluge equaled or closely equaled Deluge's revenue, resulting in no distributions in 2001, 2002 or 2003. Kanter Affidavit, ¶ 17.

The documents produced by Werner to date demonstrate the reason that Deluge reported no profit during these years. Specifically, it appears that the defendants converted hundreds of thousands of dollars of Deluge's assets, derived from the contracts for water from the Brentwood Spring, to themselves. This conversion took many forms, including payments for personal travel, loans, advances and similar transfers. Kanter Affidavit, ¶ 30. The documents evidence thousands of dollars in travel expenses, transfers, cash withdrawals and management fees in addition to Werner's "salary" and various unspecified loans and "intercompany" transfers. Kanter Affidavit, ¶ 30.

This transfer of assets by Werner occurred without any disclosure or approval by Deluge's members. See Supplemental Affidavit of Scott A. Kanter dated July 8, 2004 ("Second Kanter Affidavit"), ¶ 2, Docket No. 18. The records produced to date show significant unauthorized "loans," even during the pendency of this action and in apparent direct violation of

3

the Court's prior injunctive order.  Second Kanter Affidavit, ¶ 3.  The records also show that Werner transferred assets to other companies, including L&C, LLC and L&C, Inc., and charged expenses for services provided to these companies to Deluge.  Second Kanter Affidavit, ¶ 5.

Worse still, and critical to the rationale for the request for tax returns and the present motion to compel, it appears that in an effort to mask the matters described above, Werner and/or his accountants reclassified numerous expenses and transfers on the books of Deluge prior to providing that information to the Plaintiffs.  Second Kanter Affidavit, ¶ 9.  The information produced, therefore, fails to provide adequate or credible information regarding the operations of the business during the relevant periods, and instead appears specifically designed to hide the historical transactions of the company and Mr. Werner.  Second Kanter Affidavit, ¶¶ 9, 12.

In short, upon review of the financial records provided to date, it is clear that Werner has commingled his assets with those of Deluge and L&C, LLC and L&C, Inc.  See Supplemental Affidavit of Scott A. Kanter dated July 28, 2004 ("Third Kanter Affidavit"), ¶ 2, Docket No. 26.  There have been material reclassifications and changes to the records of the company have occurred, in an apparent effort to mask the true nature of certain prior transfers and expenses charged by Werner to Deluge.  Third Kanter Affidavit, ¶ 3.  Numerous items previously classified as expenses have been reclassified as unspecified loans and/or advances, without substantiation or explanation.  Third Kanter Affidavit, ¶ 3.  There are also many "new entries" on the books that are classified as "repayments" for amounts that never appeared to be due in the first instance, which appear designed to reduce certain amounts owed by Werner to Deluge.  Third Kanter Affidavit, ¶ 3.

No explanation has been provided for these alterations to the financial statements and they appear designed to change the historical classification of certain entries.  Third Kanter

Affidavit, ¶ 3.  Just by way of example, a sampling of adjustments in the financial statements include: (i) a reduction in cash of $44,000 and corresponding entry of an amount due from L&C; (ii) reclassification of over $8,000 legal expenses paid by Deluge to Hinckley, Allen & Snyder as amounts due from L&C; (iii) reclassification of Werner travel expenses as amounts due from a shareholder (which Werner is not) for $11,000; and (iv) reclassification of Werner salary amounts as amounts due from a shareholder (which Werner is not) for $18,000.  Third Kanter Affidavit, ¶ 4.  In addition, for the 2003 fiscal year, it appears that over $50,000 of advances, payments and transfers involving Werner were reclassified, and approximately $40,000 of advances, payments and transfers involving L&C were reclassified.  Third Kanter Affidavit, ¶ 4.  In total, prior to providing the documents ordered by the Court, it appears that hundreds of thousands of dollars in entries were reclassified, rendering the financial statements unreliable as a true indicator of the transactions that occurred during the relevant period.

      Since 2004, after filing this action and moving for contempt, Deluge has been managed by the co-plaintiff, Scott Kanter.  Since that time Deluge has recorded a profit in each subsequent year and has distributed money to its members, providing strong evidence that the transfers during the prior years were without justification and support.  In response to this compelling evidence, Werner has argued (and we believe intends to do so at trial) that the management fees, loans, and other payments recorded on the books of Deluge were in actuality salary that he bekleives he was entitled to receive.  This argument that these amounts were actually "salary" is very much contested by the members of Deluge LLC, and the alterations to the financial records have left them as not credible to answer this defense.

      In short, Plaintiffs are unable to obtain credible information and/or documentation with respect to the monies that were transferred from deluge and Werner's explanations for these

transfers through any source other than the requested tax returns. Moreover, if Werner's explanation of these transfers is that they were salary, then the tax returns will clearly show the amounts reported as such. If they are not reported, then their characterization as loans is accurate and the money must be returned by Werner to the company. The relevance of the tax returns cannot be seriously disputed by Werner. Moreover, Plaintiffs are more than willing to enter into a confidentiality agreement to allay any concerns by Werner regarding the information contained in the requested tax returns. Given these protections, there will be little prejudice in producing this highly relevant information.

### III.    ARGUMENT

Fed.R.Civ.P. 26(b)(1) provides that parties "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." Further, Fed.R.Civ.P. 26(b)(1) provides that "it is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *See Quackenbush Music Ltd. v. Alana, Inc.*, 1992 WL 439746, at *1-2 (D. Mass. Nov. 2, 1992) (ordering production of tax returns and noting that information is relevant if there is "any possibility" the information may be relevant to the subject matter of the action) (quoting *Gagne v. Reddy*, 1204 F.R.D. 454, 456 (D. Mass. 1984)).

Federal courts have consistently held that tax returns do not enjoy an absolute privilege from discovery.[1] *St. Regis Paper Co. v. United States*, 368 U.S. 208, 218-19 (1961). Federal

---

[1] As Noted by the Court in *Quackenbush*, 1992 WL 439746, at *2 n.2, Professor Moore has stated: "The majority of courts have held that copies of [federal] income tax returns in the possession of a party are not privileged, and that their production can be compelled in an appropriate case; and, further, that if a party does not have copies, he can be

6

courts have frequently followed the reasoning of *United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 119 F.R.D. 625 (E.D.N.Y.1988) in evaluating requests for tax returns, which are not unusual in civil litigation. The *Bonanno* Court established a two-prong test to determine whether the tax returns must be produced: first, the tax returns must be relevant to the action; and, second, the information contained in the returns must not be otherwise obtainable. *Bonanno* at 627. The burden to show relevancy lies on the party seeking production of the tax returns. *Id*. The burden then shifts to the party resisting disclosure to establish credible alternative sources for the information. *Id.*

The District of Massachusetts has followed a similar approach in determining whether tax returns are discoverable. *Buntzman v. Springfield Development Authority*, 146 F.R.D. 30, 32 (D. Mass. 1993); *see Pedrazza v. Holiday Housewares, Inc.*, 203 F.R.D. 40, 43 (D. Mass. 2001). "Tax returns are subject to discovery as long as they are relevant to the subject matter of the litigation." *Halperin v. Berlandi*, 114 F.R.D. 8 (D. Mass.1986) (citing *Heathman v. United States Dist. Court for Cent. District*, 503 F.2d 1032 (9th Cir.1974); *Powell v. Merrimack Mut. Fire Ins. Co.*, 80 F.R.D. 431, 433 (N.D.Ga.1978); *Weiner v. Bache Halsey Stuart, Inc.*, 76 F.R.D. 624, 627 (S.D. Fla.1977)).

In *Buntzman*, for example, the Court determined that the plaintiff's financial condition was relevant to the subject matter of the litigation and ordered plaintiff to produce his tax returns. *Buntzman*, 146 F.R.D. at 33. The central issue in the litigation was whether the plaintiff was financially able to develop certain land. *Id*. at 32. The plaintiff argued that his tax returns were not relevant to the dispute and were only requested by the defendant to harass him into dropping his lawsuit. *Id.* at 33. The Court determined that the plaintiff's tax returns were relevant despite

---

required to secure copies from the Internal Revenue Authorities." 4 James Wm. Moore, Jo Desha Lucas & george J. Groether, Jr., *Moore's Federal Practice* ¶ 26.61[5-2].

plaintiff's prior representations that he possessed sufficient funds to back the project. *Id*. The Court further determined that the select financial documents previously produced by the plaintiff were subject to various interpretations and, as such, not a true reflection of the plaintiff's financial condition. *Id*.

In the present case, the defendants' income, assets and liabilities as reported to the IRS is extremely relevant to the dispute between the parties. One of the few major remaining issues in the case for the Court to ascertain at trial is the amount of funds that were transferred out of the business by the defendants. Werner's actions in commingling funds between Deluge and L&C, LLC, including reclassifying ledger and account entries, has left the plaintiffs with no viable way other than through a review of the tax returns to compare the amounts reflected in the current version of the financial statements to the reality of what was reported by Werner and the other entities. For example, if Werner's position is that the moneys transferred represent salary, then it will be reported as such on his tax returns. No other document will reflect the veracity of this claim. *See Buntzman*, 146 F.R.D. at 32 (where party has put in issue the amount of his income, tax returns are discoverable). The plaintiffs have satisfied both prongs of the *Bonanno* test in making their request to this Court.

## IV.    CONCLUSION

For the foregoing reasons Scott A. Kanter and Deluge, LLC respectfully request that this Court allow their motion to compel the production of tax returns filed by Scott J. Werner,  L&C

BO1 15831377.1

Spring Waters Suppliers, Inc., and L&C Springwaters of New England, LLC from the year 2000 through the present.

                Respectfully submitted,

                SCOTT KANTER and DELUGE, LLC,

                By their attorney(s),

                /s/ Christopher F. Robertson
                Peter S. Brooks, BBO #058980
                Christopher F. Robertson, BBO #642094
                Brendan M. O'Rourke, BBO #567115
                Seyfarth Shaw LLP
                Two Seaport Lane, Suite 300
                Boston, MA 02210-2028
                Telephone:   (617) 946-4800
                Telecopier:   (617) 946-4801

Dated: February 28, 2007

## DEFENDANT'S LOCAL RULE 7.1(A)(2) CERTIFICATION

Pursuant to Local Rule 7.1(A)(2), I, Christopher F. Robertson, Counsel for the Plaintiffs in the above-captioned action, hereby certify that Paul Monzione and Richard Ward, counsel for Defendants, and I conferred by telephone on multiple occasions, the last of which was on February 27, 2007. Through these telephone conversations, we attempted in good faith to resolve or narrow the issues raised by the present motion, but were unable to resolve or narrow the issues.

          /s/ Christopher F. Robertson
          Christopher F. Robertson

### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 28, 2007.

          /s/ Christopher F. Robertson
          Christopher F. Robertson