UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCOTT A. KANTER and DELUGE, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SCOTT J. WERNER, WERNER ENTERPRISES and L&C SPRING WATERS OF NEW ENGLAND, LLC (f/k/a L&C SPRING WATERS OF NEW ENGLAND HOLDING COMPANY, INC.),<br><br>Defendants. | CIVIL ACTION NO. 04-10489(RCL) |

## PLAINTIFFS' PRE-TRIAL MEMORANDUM

Plaintiffs Scott A. Kanter and Deluge, LLC (collectively "Plaintiffs") respectfully submit their Pre-Trial Memorandum in accordance with the Order for Final PreTrial Conference dated January 24, 2007 (Lindsay, J.) ("Order").

**A.    TRIAL COUNSEL**

**For the Plaintiffs:**

Christopher F. Robertson (lead counsel)
Brendan M. O'Rourke
Seyfarth Shaw LLP
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone: (617) 946-4800
Facsimile: (617) 946-4801

**For the Defendants:**

Paul Monzione, Esq. (lead counsel)
Two South Main Street
Wolfeboro, NH 03894
(603) 569-9599

B.   **SUMMARY OF PLAINTIFFS' POSITION**

Deluge, LLC ("Deluge") is the lessee of a ground lease to 44.19 acres of real property in Brentwood, New Hampshire, including rights to Brentwood Spring, a natural spring water source, and owner of certain renewable contracts to supply water to third party resellers and an affiliated company.  Plaintiff Scott A. Kanter ("Kanter") and Portogon, S.A. ("Portogon") own one-third and two-thirds shares of Deluge, respectively.  Between June 10, 1997 and the present, the primary business of Deluge, LLC has been, and continues to be the supply of natural spring water from the Brentwood Spring.  The Brentwood Spring is currently a revenue-generating water source, supplying water to third party vendors under long-term contracts.

From 1997 through October 31, 2004, defendant Scott J. Werner ("Werner"), who is not a member or owner of Deluge, managed the company's day-to-day operations.  Among his other responsibilities, Werner was required to provide Deluge's accountants and its members Kanter and Portogon with annual financial information for Deluge, including revenues, expenses, assets and liabilities.  During 1997 and 1998, Werner did provide certain information to the company's accountants and members, and Deluge reported a profit and distributions were made to the Kanter and Portogon in these years.

Beginning in 2000 and through October 2004 after the present lawsuit was filed, Werner began a systematic campaign to defraud Deluge and its members, and convert the profits and assets generated by the Brentwood Spring for his own use and the use of companies controlled by Werner.  Specifically, Werner implemented a plan to move the management of Deluge to his own operating company, L&C Spring Waters of New England, LLC ("L&C"), and to move the critical contracts for the sale of water from the Brentwood Spring to L&C.  During this period, although the Brentwood Spring generated sales of $2 million, no profit was reported by Werner

and distributions were made to Deluge's members.  To the contrary, the expenses and fees charged by Werner and his companies to Deluge equaled or closely equaled Deluge's revenue, resulting in no distributions to the members.  In addition, the key contract for the use of water from the Brentwood Spring, negotiated by Werner without the involvement of the members, was placed in the name of L&C, despite the fact that it provided that the water under the contract would be drawn from the Brentwood Spring, which is owned exclusively by Deluge.  In this way, Werner assured that the revenues generated by the Brentwood Spring would not go to accounts controlled by Deluge and its members, but would go to accounts controlled by Werner, allowing unfettered access to these revenues for his personal use and the use of his other companies.

Werner and L&C (collectively "Defendants") converted hundreds of thousands of dollars of Deluge's assets, derived from the contracts for water from the Brentwood Spring, to themselves.  This conversion took many forms, including payments for personal travel, loans, advances and similar transfers, including thousands of dollars in travel expenses, transfers, cash withdrawals and management fees in addition to excessive "salary" payments and various unspecified loans and "intercompany" transfers.  This transfer of assets by Werner and L&C occurred without any disclosure or approval by Deluge's members.  Werner and L&C transferred assets to other companies, including L&C Spring Waters of New England Holding Company, Inc., and charged expenses for services provided to these companies to Deluge.

Since 2004, after filing this action and moving for contempt, control of Deluge has been removed from Werner and Deluge has been managed by plaintiff Scott Kanter.  Since that time Deluge has recorded a profit in each subsequent year and has begun distributing money to its members, providing strong evidence that the transfers during the prior years were without

justification and support. For example, just in the last two full years of management by Mr. Kanter, net profit was over $260,000, while in the years the company was managed by Werner, there were no distributions of profit to members. This evidence demonstrates that Werner and his related companies took hundreds of thousands of dollars from the business without justification from 1999 through 2004. Further confirming the amounts inappropriately taken from the business, since 2004 Werner and/or his accountants have "reclassified" numerous expenses and transfers on the books of Deluge prior to providing that information to the Plaintiffs. Plaintiffs believe that the evidence will show that Werner's efforts were specifically designed to hide the historical inappropriate transactions by Mr. Werner.

## C.   WAIVER OF CLAIMS AND DEFENSES

Plaintiffs do not waive any claims or defenses. Plaintiffs note that in November 2004 control of the management, books and records of Deluge was restored to Mr. Kanter. However, because certain contracts for the use of water from the Brentwood Spring were unlawfully placed in the name of L&C, monies from these contracts are still first being deposited with L&C and are still under the control of Werner. Plaintiffs, therefore, do not waive their claim that the contracts should be restored to Deluge and all revenues from these contracts should be deposited directly with Deluge.

## D.   STIPULATION OF FACTS

Counsel have been unable to meet to discuss, among other items, a stipulation of facts in accordance with the Order. As reported to the Court, counsel for the Defendants, Paul M. Monzione, has been on trial in Marin County, California for the last several weeks, and has been unavailable for a conference regarding the current state of settlement discussions or stipulated facts for trial. Plaintiff believes that the following facts are not in dispute:

4

1. Deluge, LLC is a Massachusetts limited liability company, formed on April 15, 1997.

2. Pursuant to the Deluge Operating Agreement, the current members of Deluge are Kanter and Portogon, with a one-third interest and a two-thirds interest, respectively. The Operating Agreement provides that Kanter is the managing member of the LLC.

3. Deluge is the lessee of a ground lease to 44.19 acres of real property in Brentwood, New Hampshire, including rights to Brentwood Spring, a natural spring water source.

4. From 1997 through October 31, 2004, Werner managed the day-to-day operations of Deluge.

5. On October 31, 2004, management of Deluge was removed from Werner and restored to Kanter.

6. The Brentwood Spring is currently in active operation, providing water to Suiza Foods GTL, LLC, under a Spring Water Supply Agreement dated November 30, 2001.

**E.   CONTESTED ISSUES OF FACT**

Plaintiffs believe that the majority of facts concerning the ownership and operation of Deluge and the Brentwood Spring from 1997 though the present are contested by the Defendants. Specifically, and for purposes of trial, the Plaintiffs believe the following facts are contested:

1. Whether the Defendants unlawfully converted the assets of Deluge and its members to themselves from 1999 through 2004.

2. The amount of damages suffered by the Plaintiffs due to the unlawful conversion of assets from Deluge to the Defendants.

3. Whether Defendants converted the contract with Suiza Foods to obtain water from the Brentwood Spring to L&C without authority or justification.

4.     Whether a purported Assignment and Contribution Agreement executed by Werner and Portogon in February 2002, without any knowledge or consent of Kanter as required in the Operating Agreement, is of any force and effect to provide Werner with any management or other authority over the affairs and operations of Deluge.  Specifically, the Operating Agreement provides that Kanter was entitled to a right a first refusal before any transfer of interests could be lawfully effectuated.  No such right was ever provided to Kanter, rendering the transaction a nullity.

**F.     PENDING MOTIONS**

Plaintiffs have filed a motion seeking production of the Defendants' Federal Income Tax Returns from 2000-present.  Subsequent to that motion, the Defendants have provided some information to the Plaintiffs for the periods 2000 to 2003.  Plaintiffs believe that they are entitled to complete production of the information requested, and in particular to the information from other entities and for 2004, when a number of highly suspicious "reclassifications" of assets and entries on the books of Deluge occurred.  Plaintiffs' Motion to Compel is currently pending before this Court.

**G.     ISSUES OF LAW**

Plaintiffs believe the issues of law in this case are relatively straightforward.  Under Massachusetts law, conversion is the wrongful taking, destruction, or detention of personal property from the owner or other person entitled to its possession, or the exercise of dominion over the property inconsistent with or in defiance of the rights of that person. Conversion does not require conscious wrongdoing.  *Hay v. Hay*, 55 Mass.App.Ct. 1111 (2002) (using funds of another to pay personal and business expenses amounted to conversion of those funds); *Ravech v. Wheeler*, 2001 WL 716899, at *5 (Mass. Super. Apr. 18, 2001) (elements of conversion claim

are right to immediate possession of money, conversion of money to own use by defendant by exercising dominion inconsistent with plaintiffs' rights, and damages) (citing *Spooner v. Holmes*, 102 Mass. 503, 506 (1869) and *Morin v. Manning*, 205 Mass. 205, 211 (1910)). "It is no defense to an action for conversion that a defendant who exercised dominion over the goods did so in good faith reasonably being mistaken in thinking the facts to be such as would give him a legal right to the goods." *Row v. Home Sav. Bank*, 306 Mass. 522, 525 (1940) (collecting cases). Moreover, the exercise of due care does not excuse a conversion and contributory negligence is not a defense. *Id.* (collecting cases). *Commonwealth v. Tuckerman*, 76 Mass. 173, 203 (1857) ("the appropriation to his own use by the defendant of money belonging to the corporation, which came into his possession by virtue of his office and employment, and was thus entrusted to his care, was an unlawful act").

Likewise, the provisions of the Operating Agreement concerning a valid transfer of interests are straightforward and mandate that before any valid transfer can occur, all the members must be provided notice of the proposed transfer and must approve it in writing. In addition, any member is entitled to a right of first refusal under the Operating Agreement to acquire the rights transferred to the third party for the same consideration offered to that third party. It is undisputed that Kanter did not approve of any transfer, nor did he receive the right of first refusal, thus invalidating any purported transfer. *See, e.g.*, *Roy v. George W. Greene, Inc.*, 404 Mass. 67, 71 (1989) (holding that plaintiff was not given right of first refusal as required in contract and was entitled to exercise that right).

Under Chapter 93A, the Defendants are liable if their conduct is deemed to be unfair or deceptive, which means that the conduct "falls 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness' or is 'immoral, unethical, oppressive or

7

unscrupulous.'" *Cambridge Plating Co. v. NAPCO, Inc.*, 85 F.3d 752, 769 (1st Cir. 1996) (quoting *PMP Assoc., Inc. v. Globe Newspaper Co.*, 321 N.E.2d 915, 917 (Mass. 1975)).  Here, the Plaintiffs contend that the evidence will clearly show that the Defendants' conduct in converting hundreds of thousands of dollars in assets of Deluge to their own use falls well within the coverage of Chapter 93A.  *See, e.g., Hanner v. Classic Auto Body, Inc.*, 10 Mass.App.Ct. 121, 122-23 (1980) (unlawful conversion amounted to violation of Chapter 93A).

H.  **AMENDMENTS TO THE PLEADINGS**

Plaintiffs do not anticipate any amendments to the pleadings unless recent discovery demonstrates that certain recently discovered corporate entities to whom assets were transferred, and over which Werner has control, should be added.  In addition, in light of the prior entry of a stipulated injunction in this case and the restoration of control of Deluge to Kanter, certain claims brought in the original complaint, such as the claim for a receiver and preliminary injunctive relief, do not appear to be at issue, and will not be the subject of the trial.  Rather, the primary issues for trial will be the conversion claims and the Chapter 93A claims, alleging that assets were wrongfully taken by the Defendants from the Plaintiffs, and seeking the restoration of those wrongfully converted assets to the Plaintiffs.

I.  **ADDITIONAL MATTERS**

Other than resolution of the pending motion to compel, Plaintiffs do not anticipate that there are any additional matters to aid in the disposition of the action.  Plaintiffs note that they are still waiting for a final response from Hinckley, Allen & Snyder regarding a subpoena for documents.  On March 19, 2007, Hinckley Allen notified Plaintiffs that it was in possession of certain documents that appear to relate to Deluge, but noted that Werner had asserted that any documents in the possession of the firm were privileged and should not be produced.  The firm

requested that Mr. Monzione review the documents before it would make a determination whether to withhold them, but Mr. Monzione stated that he would be unable to review the documents until the week of March 26, 2007 because of his pending trial in California. Once a determination is made by Mr. Monzione concerning the documents, Plaintiffs may seek the Court's assistance in resolving any claim of privilege and refusal to produce the documents.

**J.    LENGTH OF TRIAL**

Plaintiffs anticipate that this matter can be completed six (6) days.

**K.    WITNESSES**

Scott Kanter
c/o Christopher F. Robertson
Seyfarth Shaw LLP
Two Seaport Lane
Boston, MA 02210
(617) 946-4989

Braver
25 Christina Street
Newton, MA 02461
Tel: (617) 969-3300

Scott Werner
c/o Paul Monzione, Esq.
Two South Main Street
Wolfeboro, NH 03894
(603) 569-9599

Kimberley Dixon-Burrows
81 Skyview Cir
Meredith, NH

Michelle Winder
1447 Islington St
Portsmouth, NH

Paula Fuller
Powder Mill Rd
Alton, NH

Pamela Libby
28 Bennett Bridge Rd
Northwood, NH

Andrea Burrows
21 Rangers Dr
Hudson, NH
Attorney Robert J Lloyd

Tim Driscoll
Bigelow & Company
500 Commercial Street
Manchester, NH 03101
Tel: 603.627.7659
Fax: 603.626.0617

Hinckley, Allen & Snyder
28 State Street
Boston, MA 02109
(617) 345-9000

Paul Monzione, Esq.
Two South Main Street
Wolfeboro, NH 03894
(603) 569-9599

**L.    PROPOSED EXHIBITS**

Because this case was stayed pending mediation for a substantial length of time, and only recently placed back on the Court's trial calendar, Plaintiffs only recently issued subpoenas for documents from the Defendants' accounting firm, Bigelow & Co. They have produced thousands of pages of documents reflecting numerous transactions by the Defendants in connection with the assets of Deluge, and Plaintiffs and their counsel continue to review these documents for information demonstrating the exact nature and amount of the unlawful transfers of assets. For purposes of trial, plaintiffs intend to introduce the following documents, but request that the Court allow it to supplement these documents with additional financial documents recently produced by third parties as they are reviewed and determined to be relevant to supporting the claims in this case. Plaintiffs reserve the right to make changes and to

10

supplement these documents based upon Defendants' proposed documents and developments at trial.

1. Deluge LLC Operating Agreement

2. Deluge LLC tax returns from 1997 through 2006

3. Deluge General Ledgers from 1997 to 2006 demonstrating transfers of assets from Deluge to the Defendants.

4. May 21, 2001 email from Kanter to Werner

5. February 22, 2002 email from Kanter to Werner

6. Spring Water Supply Agreement, dated November 30, 2001, between Suiza Foods GTL, LLC and L&C Springwaters of New England Holding Company, LLC.

7. Loan Amortization Schedules from 2003 Bigelow Workpapers (Bates Nos. 585-586)

8. Loan schedules from 2002 Bigelow Workpapers (Bates No. 577)

9. February 20, 2002 Assignment and Contribution Agreement

10. 2003 Bigelow Workpapers reflecting American Express charges and allocations (Bates Nos. 86, 534, 551-565)

11. Bigelow Engagement Letters 2002 through 2004 (Bates Nos. 885-886, 1046-1047)

12. Bank request for Scott Werner personal financial statement (Bates No. 887)

13. Emails between Bigelow and Scott Werner (Bates Nos. 2879-2880)

14. Email between Bigelow and bookkeeper (Bates No. 1)

15. Sadakka Realty Trust 1999 tax schedule (Bates No. 1106)

16. Workpaper documents reflecting auto transfer from Sadakka to L&C (Bates No. 47-48, 1135)

17. Bigelow 2003 Allocation Schedule (Bates Nos. 6, 118-121)

18. Bigelow 2001 Allocation Schedule (Bates Nos. 258, 403-405, 1125-1128, 3056-3057, 3228)

19. Bigelow 2003 Allocation Schedules (Bates Nos. 23, 39)

20. Bigelow 2003 Equity Schedule (Bates Nos. 53, 104, 578)

21. Bigelow 2000 Workpaper Schedule (Bates No. 229)

22. Bigelow 2003 Workpaper Schedule (Bates Nos. 173, 176-77)

23. Bigelow 2003 Workpaper Schedule (Bates No. 663, 863)

24. Bigelow 2004 Workpaper Schedule (Bates No. 2)

25. Bigelow Workpapers (unknown year) (Bates Nos. 354-356)

26. Deluge Invoices (Bates Nos. 234-235, 401, 2401, 3305)

27. Deluge adjusted trial balance schedules for 2000 through 2004.

28. Deluge LLC Balance Sheet, October 31, 2004 (Bates No. 3498-3499)

29. Deluge LLC Trial Balance, December 14, 2004 (Bates No. 3502-3503)

30. Bigelow Workpaper reflecting payment to Hinckley, Allen and Paul Monzione, Esq. (Bates No. 2814)

31. Deluge 2005 Balance Sheet and Profit & Loss Statement (Bates Nos. 3347-3350).

32. Letter dated December 17, 1997 from Paul Monzione to Scott Kanter

33. Letter dated September 12, 1997 from Paul Monzione to Thomas M. Closson

34. Pleadings and related documents from *Thompson v. Werner*, Docket No. 97-E-0102 (Superior Court New Hampshire)

35. Memorandum by John Kapral dated July 17, 2000, Identity and Legal Nature of Affiliated Entities.

36. May 20, 1998 Letter from Paul Monzione to Scott Kanter

37. December 11, 1997 Board Minutes

38. L&C General Ledgers for 2000 to 2005.

39. 2000 General Ledger for L&C (Bates Nos. 1190, 1215-17)

40. 2000 General Ledger for L&C (Bates Nos. 1096-1097, 2906)

41. 2003 L&C Workpapers (Bates No. 2814)

42. 2004 L&C Workpapers (Bates Nos. 1885-1887, 1916-1917, 1925)

43. 2005 L&C Workpapers (Bates Nos. 1797, 1810-1812, 1835-1838, 1843-1854, 1915)

BO1 15836748.1

M.  **PROPOSED JURY INSTRUCTIONS**

Attached as Schedule A are Proposed Jury Instructions.

N.  **PROPOSED VOIR DIRE**

Plaintiffs do not believe there are any specific *voir dire* questions for the proposed jury members, other than those generally asked by the Court concerning competency to serve. Proposed jury Interrogatories are attached as Schedule B.

>     Respectfully submitted,
>
>     SCOTT KANTER and DELUGE, LLC,
>
>     By their attorney(s),
>
>     /s/ Christopher F. Robertson
>     Christopher F. Robertson, BBO #642094
>     Brendan M. O'Rourke, BBO #567115
>     Seyfarth Shaw LLP
>     Two Seaport Lane, Suite 300
>     Boston, MA 02210-2028
>     Telephone:    (617) 946-4800
>     Telecopier:   (617) 946-4801

Dated: March 23, 2007

## SCHEDULE A

## PROPOSED JURY INSTRUCTIONS

Plaintiffs have filed their proposed jury instructions as a separate Exhibit, filed contemporaneously herewith.

## SCHEDULE B

## PROPOSED JURY INTERROGATORIES

**Conversion/Embezzlement**

1. Did the Defendants unlawfully convert and/or embezzle money from the Plaintiffs?

    Yes/No

2. If the answer to Question 1 is "yes," how much money do you conclude was converted and/or embezzled?

    Amount $_____

3. Did the Defendants unlawfully convert any other assets, including any contracts, of the Plaintiffs?

    Yes/No

4. If the answer to Question 2 is "yes," which assets do you find were converted.

    _____

**Transfer of Interests**

5. Was the Plaintiff Kanter provided a right of first refusal in connection with the 2002 Assignment and Contribution Agreement?

    Yes/No

6. Was Kanter provided notice of the 2002 Assignment and Contribution Agreement prior to its execution?

    Yes/No

**Chapter 93A (Advisory)**

7. Do you find that the Defendants' actions were unfair and deceptive in violation of Chapter 93A?

    Yes/No

15